## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| FOLEY MA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. |
| | ) | 1:16-cv-01055-LMM-CMS |
| v. | ) | |
| | ) | |
| EQUIFAX INFORMATION | ) | |
| SERVICES LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## PRETRIAL ORDER

1.

There are no motions or other maters pending for consideration by the court, other than the following:

Defendant Equifax Information Services LLC ("Equifax") intends to file motions in limine.

Equifax is filing a motion to exclude Plaintiff's expert.

Plaintiff intends to file motions in limine.

2.

All discovery has been completed, unless otherwise noted, and the court will not consider any further motions to compel discovery. (Refer to LR 37.1B). Provided there is no resulting delay in readiness for trial, the parties shall, however, be permitted to take the depositions of any persons for the preservation of evidence and for use at trial.

3.

Unless otherwise noted, the names of the parties as shown in the caption to this Order and the capacity in which they appear are correct and complete, and there is no question by any party as to the misjoinder or non-joinder of any parties.

4.

Unless otherwise noted, there is no question as to the jurisdiction of the court; jurisdiction is based upon the following code sections. (When there are multiple claims, list each claim and its jurisdictional basis separately.)

15 U.S.C. § 1681p, 28 U.S.C. § 1331

5.

The following individually-named attorneys are hereby designated as lead counsel for the parties:

Plaintiff: Justin M. Baxter, Shimshon E. Wexler

Defendant: Phyllis B. Sumner, Lewis P. Perling

6.

Normally, the plaintiff is entitled to open and close arguments to the jury. (Refer to LR39.3(B)(2)(b)).  State below the reasons, if any, why the plaintiff should not be permitted to open arguments to the jury.

7.

The captioned case shall be tried (X) to a jury or (___) to the court without a jury, or (___) the right to trial by jury is disputed.

8.

State whether the parties request that the trial to a jury be bifurcated, i.e. that the same jury consider separately issues such as liability and damages. State briefly the reasons why trial should or should not be bifurcated.

Should there be a finding by the jury that Equifax "willfully" violated the Fair Credit Reporting Act, then Equifax requests that the Court bifurcate the quantification of punitive damages from the trial on liability and compensatory damages.

Plaintiff states that bifurcation is not necessary. Evidence of willful violations under Section 1681n of the FCRA is similar and overlapping with evidence supporting calculation of punitive damages. Bifurcation will lengthen the trial by requiring additional presentation of evidence, argument, and deliberation by the jury. Witnesses may need to recalled. The parties currently estimate that the trial will require four days. Bifurcation would potentially push the trial into a second week. The jury can be instructed that is may only consider punitive damages if it returns a verdict that Equifax willfully violated the FCRA.

9.

Attached hereto as Attachment "A" and made a part of this order by reference are the questions which the parties request that the court propound to the jurors concerning their legal qualifications to serve.

10.

Attached hereto as Attachment "B-1" are the general questions which plaintiff wishes to be propounded to the jurors on voir dire examination.

Attached hereto as Attachment "B-2" are the general questions which defendant wishes to be propounded to the jurors on voir dire examination.

Attached hereto as Attachment "B-3", "B-4", etc. are the general questions which the remaining parties, if any, wish to be propounded to the jurors on voir dire examination.

The court, shall question the prospective jurors as to their address and occupation and as to the occupation of a spouse, if any. Counsel may be permitted to ask follow-up questions on these matters. It shall not, therefore, be necessary for counsel to submit questions regarding these matters. The determination of whether the judge or counsel will propound general voir dire questions is a matter of courtroom policy which shall be established by each judge.

11.

State any objections to plaintiff's voir dire questions:

18.     Vague and irrelevant.  There is no evidence of any debt collection activity in this case.

19.     Argumentative, prejudicial, and confusing.

20.     Argumentative, prejudicial, and confusing.

State any objections to defendant's voir dire questions:

10.     Is there anyone here who believes that a corporation is not entitled to the same fair and conscientious consideration as if it were an individual?

Objection(s): Argumentative.

11.     Do you believe that credit reports maintained by credit reporting agencies must always be 100% accurate even if the law does not require it?

Objection(s): Argumentative.

12.     Do you follow the credit reporting industry in the media?

Objection(s): Irrelevant.

13.     Do you subscribe to a credit monitoring service?

Objection(s): Irrelevant.

14.    Do you believe that any time that a person or company makes a mistake, it means that the person or company was not acting reasonably?

Objection(s): Argumentative.

15.    Will you be able to find for Equifax if Equifax did not cause the plaintiff any damages?

Objection(s): Argumentative.

16.    Do you think it is possible for you to feel bad for the plaintiff but return a judgment for the defendant?

Objection(s): Argumentative, irrelevant.

17.    Could you, if instructed to do so by the Court, put aside any natural feelings of sympathy for the plaintiff during jury deliberations and decide the case strictly on the facts and the law?

Objection(s): Argumentative, irrelevant.

18.    Do you feel, before you hear any evidence, that you could not find in favor of Equifax?

Objection(s): Argumentative, irrelevant.

20.    Do you believe that credit reporting agencies treat people unfairly?

Objection(s): Argumentative, irrelevant.

12.

All civil cases to be tried wholly or in part by jury shall be tried before a jury consisting of not less than six (6) members, unless the parties stipulate otherwise. The parties must state in the space provided below the basis for any requests for additional strikes. Unless otherwise directed herein, each side as a group will be allowed the number of peremptory challenges as provided by 28 U.S.C. § 1870. See Fed.R.Civ.P. 47(b).

13.

State whether there is any pending related litigation. Describe briefly, including style and civil action number.

N/A

14.

Attached hereto as Attachment "C" is plaintiff's outline of the case which includes a succinct factual summary of plaintiff's cause of action and which shall be neither argumentative nor recite evidence. All relevant rules, regulations, statutes, ordinances, and illustrative case law creating a specific legal duty relied upon by plaintiff shall be listed under a separate heading. In negligence cases, each and every act of negligence relied upon shall be separately listed. For each item of damage claimed, plaintiff shall separately provide the following information: (a) a brief description of the item claimed, for example, pain and suffering; (b) the dollar amount claimed; and (c) a citation to the law, rule, regulation, or any decision authorizing a recovery for that particular item of damage. Items of damage not identified in this manner shall not be recoverable.

15.

Attached hereto as Attachment "D" is the defendant's outline of the case which includes a succinct factual summary of all general, special, and affirmative defenses relied upon and which shall be neither argumentative nor recite evidence. All relevant rules, regulations, statutes, ordinances, and illustrative case law relied upon as creating a defense shall be listed under a separate heading. For any counterclaim, the defendant shall separately provide the following information for each item of damage claimed: (a) a brief description of the item claimed; (b) the dollar amount claimed; and (c) a citation to the law, rule, regulation,

or any decision authorizing a recovery for that particular item of damage. Items of damage not identified in this manner shall not be recoverable.

16.

Attached hereto as Attachment "E" are the facts stipulated by the parties. No further evidence will be required as to the facts contained in the stipulation and the stipulation may be read into evidence at the beginning of the trial or at such other time as is appropriate in the trial of the case. It is the duty of counsel to cooperate fully with each other to identify all undisputed facts. A refusal to do so may result in the imposition of sanctions upon the non-cooperating counsel.

17.

Plaintiff contends the legal issues to be tried are as follows: 1) Whether Defendant Equifax Information Services, LLC, failed to comply with the Fair Credit Reporting Act, 2) whether such violation was negligent or willful; 3) the amount, if any, of Plaintiff Foley Ma's actual damages; and 4) the amount, if any, of punitive damages to be awarded.

Defendant contends the legal issues to be tried are as follows:

1) Whether plaintiff can prove, by a preponderance of the evidence, that Defendant Equifax Information Services, LLC, negligently failed to comply with § 1681e of the Fair Credit Reporting Act,

2) whether plaintiff can prove, by a preponderance of the evidence, that Defendant Equifax Information Services, LLC, negligently failed to comply with § 1681i of the Fair Credit Reporting Act,

3) whether plaintiff can prove, by a preponderance of the evidence, that he suffered actual damages as a direct and proximate result of any negligent failure to comply with the

FCRA,

4) whether plaintiff can prove, by a preponderance of the evidence, that any violation was willful,

5) whether plaintiff can prove, by a preponderance of the evidence, that Defendant Equifax Information Services, LLC, willfully failed to comply with § 1681e of the Fair Credit Reporting Act,

6) whether plaintiff can prove, by a preponderance of the evidence, that Defendant Equifax Information Services, LLC, willfully failed to comply with § 1681i of the Fair Credit Reporting Act.

18.

Attached hereto as Attachment "F-1" for the plaintiff, Attachment "F-2" for the defendant, and Attachment "F-3", etc. for all other parties is a list of all the witnesses and their addresses for each party.  The list must designate the witnesses whom the party will have present at trial and those witnesses whom the party may have present at trial. Expert (any witness who might express an opinion under Rule 702), impeachment and rebuttal witnesses whose use as a witness can be reasonably anticipated must be included.  Each party shall also attach to the list a reasonable specific summary of the expected testimony of each expert witness.

All of the other parties may rely upon a representation by a designated party that a witness will be present unless notice to the contrary is given ten (10) days prior to trial to allow the other party(s) to subpoena the witness or to obtain the witness' testimony by other means. Witnesses who are not included on the witness list (including expert, impeachment and rebuttal witnesses whose use should have been reasonably anticipated) will not be permitted to testify, unless expressly authorized by court order based upon a showing that the failure to comply was justified.

19.

Attached hereto as Attachment "G-1" for the plaintiff, "G-2" for the defendant, and "G3", etc. for all other parties are the typed lists of all documentary and physical evidence that will be tendered at trial. Learned treatises which are expected to be used at trial shall not be admitted as exhibits. Counsel are required, however, to identify all such treatises under a separate heading on the party's exhibit list.

Each party's exhibits shall be numbered serially, beginning with 1, and without the inclusion of any alphabetical or numerical subparts. Adequate space must be left on the left margin of each party's exhibit list for court stamping purposes. A courtesy copy of each party's list must be submitted for use by the judge.

Prior to trial, counsel shall mark the exhibits as numbered on the attached lists by affixing numbered yellow stickers to plaintiff's exhibits, numbered blue stickers to defendant's exhibits, and numbered white stickers to joint exhibits. When there are multiple plaintiffs or defendants, the surname of the particular plaintiff or defendant shall be shown above the number on the stickers for that party's exhibits.

Specific objections to another party's exhibits must be typed on a separate page and must be attached to the exhibit list of the party against whom the objections are raised. Objections as to authenticity, privilege, competency, and, to the extent possible, relevancy of the exhibits shall be included. Any listed document to which an objection is not raised shall be deemed to have been stipulated as to authenticity by the parties and shall be admitted at trial without further proof of authenticity.

Unless otherwise noted, copies rather than originals of documentary evidence may be used at trial. Documentary or physical exhibits may not be submitted by counsel after filing of the pretrial order, except upon consent of all the parties or permission of the court. Exhibits so admitted must be numbered, inspected by counsel, and marked with stickers prior to trial. Counsel shall familiarize themselves with all exhibits (and the numbering thereof) prior to trial. Counsel will not be afforded time during trial to examine exhibits that are or should have been listed.

20.

The following designated portions of the testimony of the persons listed below may be introduced by deposition:

By Plaintiff:

Alicia Fluellen: 67:6-16; 70:7-25; 71:1-8; 73:16-25; 74:1-10, 25; 75:1-25; 76:1-4; 78:4-25; 79:1-25; 80:1-25; 81:1-25; 82:1-2; 87:15-25; 88:1-25; 89:1-25; 90:1-7; 91:3-25; 94:24-25; 95:1-13, 19-25; 96:2-23; 97:4-25; 98:1-25; 99:1-25; 100:1-25; 101:1-25; 102:1-25; 103:1-9, 21-25; 104:1-25; 105:1-25; 106:1-6, 12-25; 107:1-25; 108:1-25; 109:1-25; 110:1-25; 111:1-25; 112:1-25; 113:1-13; 114:1-25; 115:1-19; 116:12-25; 117:1-25; 118:1-25; 119:1-25; 120:1-25; 121:1-25; 122:1-25; 123:1-25; 124:1-25; 125:1-25; 126:1-25; 127:1-25; 128:1-10; 129:10-25; 130:2-25; 131:2-25; 132:1-25; 133:1-25; 134:1-25; 135:1-25; 136:1-25; 137:1-25; 138:1-25; 139:1-25; 140:1-25; 141:1-25; 142:1-25; 143:1-25; 144:1-25; 145:1-25; 146:1-25; 147:1-10

Mary Margaret Fortson Leslie: 6:6-14; 8:3-25; 9:1-8, 21-25, 10:1-2, 11-25; 11:1-25; 12:1; 13:17-25; 14:1-25; 15:1-25; 16:1-25; 17:1-25; 18:1-23; 19:14-25; 20:1-25; 21:1-25; 22:1-25; 23:1-25; 24:1-25; 25:1-12, 25; 25:1-22; 28:1-25; 29:1-25; 30:1-25; 31:1-25; 32:1-25; 33:1-25; 34:1-25; 35:1-25; 36:1-25; 37:1-25; 38:1-25; 39:1-25; 40:9-22; 44:5-25; 45:1-20; 49, 22-25; 50:1-25; 51: 1-11

By Equifax:

1.  Foley Ma: 10:13-17; 66:4-23; 67:8-18; 67:22-68:6: 6913-17; 71:23-72:3: 73:14-18;75:24-76:3; 79:10-20; 80:24-82:7; 115:18-116:6; 142:5-143:2; 143:18-24; 144:4-18; 152:21-153:13; 162:6-11; 162:17-163:5

2.  Bing Ma:  12:4-21; 14:10-15:6; 16:5-9;

3.  Wun Ma:  11:2-16; 11:19-22;

4.  Manuel Alejandro Rascon: 5:7-6:8; 8:8-9:25;15:20-22; 16:9-17:5; 17:18-21; 18:10-21; 19:6-10; 20:2-7; 22:14-23:2; 23:6-21; 24:8-12; 26:2-27:13; 28:10-22; 33:23-34:9; 41:8-43:10; 47:6-20.

Any objections to the depositions of the foregoing persons or to any questions or answers in the depositions shall be filed in writing no later than the day the case is first scheduled for trial.  Objections not perfected in this manner will be deemed waived or abandoned.  All depositions shall be reviewed by counsel and all extraneous and unnecessary matter, including non-essential colloquy of counsel, shall be deleted.  Depositions, whether

preserved by  stenographic means or videotape, shall not go out with the jury.

## 21.

Attached hereto as Attachments "H-1" for the plaintiff, "H-2" for the defendant, and "H-3", etc. for other parties, are any trial briefs which counsel may wish to file containing citations to legal authority concerning evidentiary questions and any other legal issues which counsel anticipate will arise during the trial of the case.  Limitations, if any, regarding the format and length of trial briefs is a matter of individual practice which shall be established by each judge.

## 22.

In the event this is a case designated for trial to the court with a jury, requests for charge must be submitted no later than 9:30 a.m. on the date on which the case is calendared (or specially set) for trial. Requests which are not timely filed and which are not otherwise in compliance with LR 51.1, will not be considered.  In addition, each party should attach to the requests to charge a short (not more than one (1) page) statement of that party's contentions, covering both claims and defenses, which the court may use in its charge to the jury.

Counsel are directed to refer to the latest edition of the Eleventh Circuit District Judges Association's Pattern Jury Instructions and Devitt and Blackmar's Federal Jury Practice and Instructions in preparing the requests to charge. For those issues not covered by the Pattern Instructions or Devitt and Blackmar, counsel are directed to extract the applicable legal principle (with minimum verbiage) from each cited authority.

## 23.

If counsel desire for the case to be submitted to the jury in a manner other than upon a general verdict, the form of submission agreed to by all counsel shall be shown in Attachment "I" to this Pretrial Order. If counsel cannot agree on a special form of submission, parties will propose their separate forms for the consideration of the court.

## 24.

Unless otherwise authorized by the court, arguments in all jury cases shall be limited to one-half hour for each side.  Should any party desire any additional time for argument, the request should be noted (and explained) herein.

## 25.

If the case is designated for trial to the court without a jury, counsel are directed to submit proposed finding of fact and conclusions of law not later than the opening of trial.

26.

Pursuant to LR 16.3, lead counsel and persons possessing settlement authority to bind the parties met in person on January 17, 2017, to discuss in good faith the possibility of settlement of this case. The court (_) has or (X) has not discussed settlement of this case with counsel. It appears at this time that there is:

(___) A good possibility of settlement.
(X) Some possibility of settlement.
(___) Little possibility of settlement.
(___) No possibility of settlement.

27.

Unless otherwise noted, the court will not consider this case for a special setting, and it will be scheduled by the clerk in accordance with the normal practice of the court.

28.

The plaintiff estimates that it will require 2 days to present its evidence. The defendant estimates that it will require (2) days to present its evidence. It is estimated that the total trial time is (4) days.

29.

IT IS HEREBY ORDERED that the above constitutes the pretrial order for the above captioned case (X) submitted by stipulation of the parties or (___) approved by the court after conference with the parties.

IT IS FURTHER ORDERED that the foregoing, including the attachments thereto, constitutes the pretrial order in the above case and that it supersedes the pleadings which are hereby amended to conform hereto and that this pretrial order shall not be amended except by Order of the court to prevent manifest injustice. Any attempt to reserve a right to amend or add to any part of the pretrial order after the pretrial order has been filed shall be invalid and of no effect and shall not be binding upon any party or the court, unless specifically authorized in writing by the court.

IT IS SO ORDERED this _____ day of _____, 2017.


_____
UNITED STATES DISTRICT JUDGE

Each of the undersigned counsel for the parties hereby consents to entry of the foregoing pretrial order, which has been prepared in accordance with the form pretrial order adopted by this court.


s/ Justin M. Baxter           /s/Lewis P. Perling_____
Counsel for Plaintiff         Counsel for Defendant

## **CERTIFICATE OF COMPLIANCE**

The undersigned certifies that 14 point New Times Roman was used for this pleading and that it has been formatted in compliance with Local Rule 5.4.

DATED this 25th day of August, 2017.


/s/ *Justin M. Baxter*                           
Justin M. Baxter

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will automatically send email notifications of such filing to all attorneys of record.

DATED this 25th day of August, 2017.

/s/ *Justin M. Baxter*
Justin M. Baxter

Attachment A

## VOIR DIRE – LEGAL QUALIFICATIONS TO SERVE

**In addition to the Court's standard qualifying questions, the parties request that the following questions be propounded:**

1. Is the prospective juror a United States citizen?

2. Is the prospective juror at least 18 years of age?

3. Has the prospective juror resided primarily in the judicial district for one year?

4. Is the prospective juror adequately proficient in English to satisfactorily complete the juror qualification form?

5. Does the prospective juror have any disqualifying mental or physical condition?

6. Is the prospective juror currently subject to felony charges punishable by imprisonment for more than one year?

7. Has the prospective juror been convicted of a felony?

8. If the answer to question 7 is "yes", have the prospective juror's civil rights been legally restored?

9. Do any of you know, or have you ever met, or have you heard anything about any of the following witnesses who may testify in this case:

      SEE WITNESS LISTS ATTACHED TO PRETRIAL ORDER AS ATTACHMENTS F-1 AND F-2

10. Do you have any problems such as vision, hearing, medical, language or other problems that may affect your jury service?

11. Are any of the jurors related by blood or marriage to Plaintiff, Plaintiff's counsel or Defendant's counsel?

12. What is your highest level of education?

13.    Have you ever been a party to a lawsuit?

Attachment B-1
Plaintiff's Voir Dire Questionnaire/Questions

1. Your name: _____

2. Your age: _____

3. The city where you live: _____
How long have you lived there:_____

4. Your place of birth: _____

5. Do you rent or own your own home? _____

6. Your marital status: _____

7. What is your occupation, and how long have you worked in it? (If you are retired, please describe your main occupation when you were working).
_____
_____

8. Who is (or was) your employer?
_____

9. How long have you worked for this employer? _____

10. Please list the occupations of any adults with whom you live.
_____

11. If you have children, please list their ages and gender and, if they are employed, please give their occupations.
_____
_____
_____

12. Please describe your educational background:

Highest grade completed: _____

College and/or vocational schools you have attended:

_____
_____
_____
Major areas of study:_____

13. Have you ever served on a jury before? _____ How many times?_____
If yes: State/County Court _____ Federal Court _____
When? _____
Was it a civil or criminal case? _____
Did the jury(ies) reach a verdict? _____

14. Attached is a list of the parties in this case, the law firms representing the parties, attorneys in this case, and persons who are potential witnesses in this case. Do you know, or think you know, any of the persons listed?
Yes:_____ No:_____
If so, make a check next to their name.

15. Have you or any member of your family ever been employed by a credit reporting agency?

16.  Have you or any member of your family ever had a job for a company that furnished credit information to credit reporting agencies? Please explain.

17. Have you or any member of your family ever had a job that involved handling customer complaints? Please explain.

18.  Have you or any member of your family ever worked for a debt collection agency or in a collections department? Please explain.

19.  If you find that Equifax negligently violated the Fair Credit Reporting Act, is there anyone that is unwilling to consider awarding damages to Mr. Ma?

20.  If you find that Equifax willfully violated the Fair Credit Reporting Act, is there anyone that is unwilling to consider awarding punitive damages against Equifax?

21. Do you feel for any reason not otherwise discussed that you could not sit and hear this case and thereafter render a verdict which would be fair to both the Plaintiff and the Defendant under the evidence as it may be presented?

## ATTACHMENT B-2

## DEFENDANT'S VOIR DIRE QUESTIONS

Defendant Equifax Information Services LLC submits the following proposed voir dire questions:

1.      Are you or any member of your family acquainted with or related to plaintiff Foley Ma, or his family members?

2.      Have you ever requested a copy of your credit file from a credit reporting agency such as Experian, Equifax, or Trans Union?

3.      Have you, anyone in your family, or any of your close friends ever had a problem with a credit report?  [Note: if any juror responds in the affirmative, Equifax requests individual voir dire concerning the details of the problem outside the presence of the full panel in order to protect the confidentiality of the subject juror(s)].

4.      Have you or anyone in your family ever had a bad experience with a credit reporting agency?  [Note: if any juror responds in the affirmative, Equifax requests individual voir dire concerning the details of the denial outside the presence of the full panel in order to protect the confidentiality of the subject juror(s).]

5.      Have you, anyone in your family, or anyone you know ever disputed an entry on your credit report with a credit reporting agency?  [Note: if any juror responds in the affirmative, Equifax requests individual voir dire concerning the details of the dispute outside the presence of the full panel in order to protect the confidentiality of the subject

juror(s)].

6.     Have you or any member of your family ever been employed by a credit reporting agency?  Please explain.

7.     Have you or any member of your family ever had a job for a company that furnished credit information to credit reporting agencies?  Please explain.

8.     Have you or any member of your family ever had a job that involved handling customer complaints?  Please explain.

9.     Have you or any member of your family ever had a job that involved assisting people in making disputes with credit reporting agencies?

10.    Is there anyone here who believes that a corporation is not entitled to the same fair and conscientious consideration as if it were an individual?

11.    Do you believe that credit reports maintained by credit reporting agencies must always be 100% accurate even if the law does not require it?

12.    Do you follow the credit reporting industry in the media?

13.    Do you subscribe to a credit monitoring service?

14.    Do you believe that any time that a person or company makes a mistake, it means that the person or company was not acting reasonably?

15.    Will you be able to find for Equifax if Equifax did not cause the plaintiff any damages?

16.    Do you think it is possible for you to feel bad for the plaintiff but return a

judgment for the defendant?

17.     Could you, if instructed to do so by the Court, put aside any natural feelings of sympathy for the plaintiff during jury deliberations and decide the case strictly on the facts and the law?

18.     Do you feel, before you hear any evidence, that you could not find in favor of Equifax?

19.     Do you feel you favor either the Plaintiff or Defendant because of the nature of the case or identity of the parties?

20.     Do you believe that credit reporting agencies treat people unfairly?

21.     Do you feel for any reason not otherwise discussed that you could not sit and hear this case and thereafter render a verdict which would be fair to both the Plaintiff and the Defendant under the evidence as it may be presented?

## **ATTACHMENT C -** Plaintiff's Outline

Factual Summary

Defendant Equifax Information Services, LLC ("Equifax") mixed plaintiff Foley Ma's credit file with a woman named Mary Anderson (nee Williams). Mr. Ma has never used the name Anderson or Williams, and is a man and not a woman.

Mr. Ma repeatedly contacted Equifax to dispute the false information in his credit report. In 2010, Equifax falsely told Mr. Ma that it had deleted the name Mary Williams from his credit file. However, in December of 2015, when Mr. Ma was attempting to obtain a mortgage, he learned that Ms. Williams' name and accounts were still being reported.

Mr. Ma's mortgage broker obtained a credit report which indicated that Equifax was again reporting accounts and information related to Mary L. Williams. As a result of the inaccurate information, Mr. Ma was required by the lender to increase his down payment and pay off his entire outstanding car loan in order to qualify for the mortgage. He had to borrow money from his family to qualify for the mortgage.

On December 18, 2015 Mr. Ma wrote to Equifax disputing the Anderson/Williams accounts and information. Equifax failed to delete the name "Mary Anderson" and deleted some but not all of her accounts. Even as recently as August 5, 2016 – months after this case was filed – Equifax was still reporting a false collection account belonging to Ms. Anderson on Mr. Ma's credit report.

Relevant Rules, Regulations, Statutes, Ordinances, and Illustrative Case Law[1]

1. The Fair Credit Reporting Act, 15 U.S.C. 1681 et seq.

2. 15 U.S.C. § 1681e(b) (maximum possible accuracy)

3. 15 U.S.C. § 1681i(a) (reinvestigation of disputed information)

4. 15 U.S.C. § 1681b (consumer report without permissible purpose)

---

[1] Plaintiff submits herewith his Trial Brief as Attachment H-1, which includes a statement of applicable law. This section lists only the relevant statutes setting forth plaintiff's claims for relief.

5. 15 U.S.C. § 1681o (cause of action for negligent violation)

6. 15 U.S.C. § 1681n (cause of action for willful violation)

<u>Damages</u>

Plaintiff seeks actual damages in an amount to be determined by the jury, including but not limited to: harm to credit reputation; unfavorable credit terms; reduction in credit score; emotional distress and mental anguish; out-of-pocket expenses; and time. Citation: 15 U.S.C. § 1681o and 1681n.

Plaintiff seeks punitive damages in an amount to be determined by the jury. 15 U.S.C. § 1681n.

Plaintiff seeks attorney fees and costs in an amount to be determined by the Court. 15 U.S.C. § 1681o and 1681n

_____

**ATTACHMENT D**

**DEFENDANT'S OUTLINE OF THE CASE**

## I.  OUTLINE OF EQUIFAX'S DEFENSES

Plaintiff cannot prove that Equifax violated the FCRA. The FCRA neither requires error-free credit reports nor imposes strict liability for an inaccurate credit report. *See, Cahlin v General Motors Acceptance Corp*., 936 F.2d 1151, 1156 (11th Cir. 1991) ("[The FCRA], however, does not make [CRAs] strictly liable for all inaccuracies."); *Thompson v. San Antonio Retail Merchants Assoc.*, 682 F.2d 509, 513 (5th Cir. 1982) ("[s]ection 1681e(b) does not impose strict liability for any inaccurate credit report"); *see also* FTC Commentary on the FCRA, 16 C.F.R. Pt. 600, App. (stating the FCRA "does not require error-free consumer reports").

The FCRA instead requires that Defendants follow "reasonable procedures" to ensure the accuracy of the information it reports. 15 U.S.C. § 1681e(b); *Cahlin*, 936 F.2d at 1156-61 (no violation of FCRA if "an inaccurate report was generated by following reasonable procedures"). In order to succeed on his 15 U.S.C. § 1681e(b) claim, Plaintiff must show that: (1) Defendant prepared a report containing inaccurate information; (2) the inaccuracy was a result of Defendant's failure to follow reasonable procedures; (3) he suffered an injury; and (4) the failure was a proximate cause of the injury. *See Cahlin*, 936 F.2d at 1156-61. Plaintiff cannot show that any of the Defendants' procedures for providing accurate information were unreasonable. *See Cahlin*, 936 F.2d at 1156-61.

Nor will Plaintiff be able to show that Equifax failed to conduct a reasonable reinvestigation of his dispute. FCRA § 1681i(a) states, "if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer," the agency must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file . . . ." 15 U.S.C. § 1681i(a)(1)(A). To prevail on a claim of negligent noncompliance with the FCRA § 1681i(a), Plaintiff must prove: (1) his credit report contains inaccurate or incomplete information; (2) he notified Equifax of the alleged inaccuracy; (3) the dispute is not frivolous or irrelevant; (4) Equifax failed to respond or conduct a reasonable reinvestigation of the disputed items; and (5) the failure to reinvestigate caused him to suffer actual damages. *Lazarre v. JPMorgan Chase Bank, N.A.*, 780 F. Supp. 2d 1330, 1334 (S.D. Fla. 2011) (citing *Bermudez v. Equifax Info. Servs., LLC*, No. 6:07–cv–1492–Orl–31GJK, 2008 WL 5235161, at *4 (M.D. Fla. Dec. 15, 2008)). The facts demonstrate that Equifax complied with the mandates of § 1681i.

Section 1681b of the FCRA limits the circumstances under which consumer reporting agencies may furnish a "consumer report." *See* 15 U.S.C. § 1681b(a). To establish a claim under § 1681b, Plaintiff must show that (1) there was a consumer report; (2) the company used or obtained the report; (3) without a permissible purpose; and (4) Equifax acted negligently or willfully. *Perrill v. Equifax Information Services LLC*, 2016

WL 4572212, at *5 (W.D. Tex. Aug. 31 2016). Further, as relevant here, a report may be furnished regarding a consumer if the agency "has reason to believe" the report will be used for purposes of establishing consumer credit for the consumer to whom the report relates. 15 U.S.C. § 1681b(a)(3)(A). Plaintiff has not identified, and has no evidence of, any instances when his consumer report was negligently or willfully furnished to a third party. Plaintiff has no evidence that Equifax had reason to believe that any information it might have furnished would be used for an impermissible purpose. Further, Plaintiff has no evidence that such an alleged violation caused him harm. Equifax has extensive policies and procedures adopted to assure their subscribers only request reports for permissible purposes.

Another essential element of establishing an FCRA claim is evidence that Plaintiff suffered an injury and that the injury was caused by Equifax's FCRA violation.  In this case, Plaintiff will not be able to establish that he incurred any damages based on the reporting of inaccurate information. *See Smith v. E-Backgroundchecks.com, Inc.*, 81 F. Supp. 3d 1342, 1365 (N.D. Ga. 2015) ("Damages are an element of [an FCRA] claim, and without evidence of damages, summary judgment is appropriate."). To establish a claim under the FCRA, the plaintiff bears the burden of proving "that he was damaged as the result of an allegedly inaccurate [] credit report." *Cahlin*, 936 F.2d at 1160-61 (emphasis added).

Finally, Plaintiff's claims for punitive damages fail. To establish willful

noncompliance with the FCRA, the consumer must show, at a minimum, that the defendant acted in "reckless disregard of its statutory duty." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007). Equifax's actions do not remotely rise to the level of recklessness, which, under *Safeco*, is "conduct violating an objective standard: action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Safeco*, 551 U.S. at 56. Equifax did not ignore Plaintiff's dispute or fail to respond.  Even if it is found to be negligent in complying with the FCRA, there is no basis for punitive damages in this case.

## II.    FACTUAL SUMMARY

Equifax is a consumer reporting agency as that term is defined by the FCRA. As a consumer reporting agency, Equifax maintains credit files for over 200 million consumers, including plaintiff Foley Ma. Equifax follows reasonable procedures to maintain the maximum possible accuracy of the credit files it maintains.

In meeting their obligation to follow reasonable procedures to assure the maximum possible accuracy of the information they use to prepare consumer reports, Consumer Reporting Agencies (CRAs) such as Equifax attempt to maintain just one file for every credit-using consumer and to include as many of that consumer's accounts and other records in the file as possible.  To accomplish this, Equifax takes the information it receives from approximately 30,000 furnishers, and links that information to identifying information, such as the consumer's name, Social Security number ("SSN"), address, and

birth date.  Because the information is furnished by different businesses who provide different levels of detail in consumers' identifying information, Equifax must necessarily implement a matching-of-information process in order to provide full file disclosures to consumers as required by the FCRA, and to prepare and furnish consumer reports to those users who have a permissible purpose to obtain and use the information.

The attempts to maintain just one file for each consumer poses a unique challenge for Equifax and the other CRAs.  This case involves one such situation where the Plaintiff alleges that information that belongs to another consumer appeared on his credit file. That situation is often referred to as a "mixed file." Equifax combined the files of Plaintiff and another consumer based on similarities in the identifying information.  The alleged mixed file here, however, did not occur as a result of Equifax's failure to have in place reasonable procedures to avoid the wrong information from appearing on Plaintiff's file.

Equifax has detailed training programs for its employees that handle consumer disputes regarding mixed files and has comprehensive policies and procedures in place to determine when information should be removed from a consumer's file. The facts will show that Plaintiff contacted Equifax only once and that Equifax reinvestigated as required by the FCRA and sent the results to Plaintiff in a timely manner.

Mr. Ma has the burden of proving that Equifax published a credit report about him to a third party that contained the alleged inaccurate information and that Equifax proximately caused him damage as a result.  He cannot meet that burden.

## ATTACHMENT E

## STIPULATED FACTS

The parties stipulate as follows:

1. Plaintiff Foley Ma is consumer as defined by the Fair Credit Reporting Act, 15 U.S.C. § 1681a(c).

2. Defendant Equifax Information Services LLC is a "consumer reporting agency" as defined by the Fair Credit Reporting Act, 15 U.S.C. § 1681a(f).

## ATTACHMENT F-1
### Plaintiff's Witness List

1. Foley Ma

2. Becky Nguyen

3. Holly Walther

4. Cameron McConnell

5. Chenrui Chen

6. Bing Ma

7. Wun Ma

8. Equidata

9. Susan Moran

10. Alejandro Rascon

11. Navy Federal Credit Union

12. Evan Hendricks

Plaintiff reserves the right to amend the foregoing list of witnesses in a manner so as not to delay the trial and give ample notice to Defendant. Plaintiff also requests the right to call any witnesses listed by Defendant and additional witnesses in rebuttal to testimony provided by Defendant's witnesses.

————————————

## ATTACHMENT F-2

## DEFENDANT'S LIST OF WITNESSES

Defendant, Equifax provides the following list of witnesses that may be called at trial.

1.  Foley Ma, Plaintiff

2.  Alicia Fluellen, Equifax Information Services LLC, 1550 Peachtree Street, NE, Atlanta, Georgia 30309, c/o Equifax's counsel

3.  Margaret Leslie, Equifax Information Services LLC, 1550 Peachtree Street, NE, Atlanta, Georgia 30309, c/o Equifax's counsel

4.  Chenrui Ma

5.  Bing Ma

6.  Wun Ma

7.  Manuel Alejandro Rascon

8.  Any witness listed by Plaintiff

9.  Any witnesses that may be necessary for impeachment or rebuttal.

Equifax reserves the right to supplement or amend this list based upon the Court's decision on the its Motions in Limine and any other Pretrial ruling. Equifax reserves the right to amend the foregoing list of witnesses in a manner so as not to delay the trial and give ample notice to Plaintiff. Equifax reserves any and all objections to Plaintiff's witnesses.

## ATTACHMENT G-1
## Plaintiff's Documentary and Physical Evidence that will be Tendered at Trial

| Court Use | Exhibit No. | Description |
|---|---|---|
| | Ex. 1 | P000001-000010 – 1/23/07 Credit Report |
| | Ex. 2 | P000011-000013 – 8/2/10 Results |
| | Ex. 3 | P000014-000026 – 8/2/10 Credit Report |
| | Ex. 4 | P000031-000032 – 12/2/15 Credit Report |
| | Ex. 5 | P000033 – 12/4/15 Email |
| | Ex. 6 | P000034-000178 – 12/4/15 Credit Report |
| | Ex. 7 | P000179-000215 – 12/4/15 Email |
| | Ex. 8 | P000216 – 12/9/15 Gift Letter |
| | Ex. 9 | P000217 – 12/14/15 Avantus Letter |
| | Ex. 10 | P000218-000219 – 12/18/15 Email |
| | Ex. 11 | P000221 – 12/18/15 Letter |
| | Ex. 12 | P000222-000230 – 12/18/15 Dispute Letter |
| | Ex. 13 | P000231-000233 – 12/21/15 Email |
| | Ex. 14 | P000234-000238 – 1/15/16 Results |
| | Ex. 15 | P000239-000273 – 1/15/16 Credit Report |
| | Ex. 16 | P000274-000285 – 1/28/16 Credit Report |
| | Ex. 17 | P000720-000754 – 8/5/16 Credit Report |
| | Ex. 18 | P002041-002109 – 12/7/15 Email |
| | Ex. 19 | P002311-002315 – Ryland Homes Documents |
| | Ex. 20 | EIS000079-000204 – ACDVs |
| | Ex. 21 | EIS000205-000209 – 2010 Dispute |
| | Ex. 22 | EIS000345-000356 – Terminal Audit Info |
| | Ex. 23 | SBT000001-000045 – State Bank & Trust Docs |
| | Ex. 24 | KW000001-000048 – Keller Williams Docs |
| | Ex. 25 | EQUIDATA000001-000004 – Equidata Docs |

Plaintiff reserves the right to supplement or amend this Exhibit list based upon the Court's decision on the its Motions in Limine and any other Pretrial ruling.  Plaintiff reserves the right to offer additional documents in evidence for impeachment and rebuttal purposes and to use any exhibit listed by defendant.  Plaintiff reserves any and all objections to defendant's exhibits.

# ATTACHMENT G-2

## DEFENDANT'S LIST OF EXHIBITS

The following are the documents that Equifax may tender at trial:

| Exhibit No. | Description | Date | |
|---|---|---|---|
| | | Marked for Identification | Admitted in Evidence |
| 1. | ACIS case (EIS-MA-000001 through EIS-MA-000015) | | |
| 2. | ACIS case (EIS-MA-000016 through EIS-MA-000204) | | |
| 3. | LogF (EIS-MA-000333 through EIS-MA-000344) | | |
| 4. | Audit Trails (EIS-MA-000345 through EIS-MA-000356) | | |
| 5. | Online Combine Report (EIS-MA-000357 through EIS-MA-000368) | | |
| 6. | Frozen Scans (EIS-MA-000369 through EIS-MA-000516) | | |
| 7. | Policy and Procedure Manuals (EIS-MA-000517 through EIS-MA-001723) | | |
| 8. | 1/5/17 Disclosure (EIS-MA-001724 through EIS-MA-001749) | | |

| Exhibit No. | Description | Date | |
|---|---|---|---|
| | | Marked for Identification | Admitted in Evidence |
| 9. | Ryland Homes Agreement of Sale (CALATLANTIC_GROUP-MA-000011 through CALATLANTIC_GROUP-MA-000038) | | |
| 10. | Conversation Log for Prequalification Request (CALATLANTIC_GROUP-MA-000067 through CALATLANTIC_GROUP-MA-000068) | | |
| 11. | Demonstrative Exhibit - Process Charts Re: Mixed File Dispute Procedures | | |
| 12. | Demonstrative Exhibit – Process Charts Re: Matching Logic | | |
| 13. | Any exhibits needed for impeachment or rebuttal. | | |
| 14. | Plaintiff's Responses to Discovery | | |
| 15. | Any exhibits listed by Plaintiff to which Equifax has no objection. | | |

Equifax reserves the right to supplement or amend this Exhibit list based upon the

Court's decision on the its Motions in Limine and any other Pretrial ruling.  Equifax

reserves the right to offer additional documents in evidence for impeachment and rebuttal

purposes and to use any exhibit listed by Plaintiff.  Equifax reserves any and all objections

to Plaintiff's exhibits.

# ATTACHMENT H-1
## Plaintiff's Trial Brief

## Facts of the Case

Defendant Equifax Information Services, LLC ("Equifax") mixed plaintiff Foley Ma's credit file with a woman named Mary Anderson (nee Williams). Mr. Ma has never used the name Anderson or Williams, and is a man and not a woman.

Mr. Ma repeatedly contacted Equifax to dispute the false information in his credit report. In 2010, Equifax falsely told Mr. Ma that it had deleted the name Mary Williams from his credit file. However, in 2015, when Mr. Ma was attempting to obtain a mortgage, he learned that Ms. Williams' name and accounts were still being reported.

In January of 2007, Mr. Ma became aware that Equifax was reporting a "former name" of Mary L. Williams in his credit report. The other two national credit reporting agencies, Experian and Trans Union, were not reporting this name. Mr. Ma contacted Equifax on several occasions, and in or about August of 2010, Equifax sent Mr. Ma a letter advising that the name Mary L. Williams had been deleted from his credit file.

In December of 2015, Mr. Ma was applying for a mortgage. His loan officer obtained a credit report which indicated that Equifax was again reporting accounts and information related to Mary L. Williams. As a result of the inaccurate information, Mr. Ma was required by the lender to double his down payment and pay off his entire outstanding car loan in order to qualify for the mortgage.

On December 18, 2015 to Equifax disputing the completeness and accuracy of his file. He enclosed a copy of his Equifax credit report, and identified a series of false accounts, names, addresses and other information that did not belong to him. In addition to the "other names" Mary Anderson and Mary L. Williams, he disputed accounts for Fed Loan Servicing (multiple), Navy FCU (multiple), Aaron Rents, Conn Credit Corp, Sallie Mae (multiple), Wells Fargo, Comenity Bank, Sears, Syncrony Bank (multiple), THD/CBNA, and USAA Savings Bank.

In addition to the accounts, Mr. Ma also disputed the inclusion of "hard pull" inquiries which impact a consumer's credit score, but which Mr. Ma did not initiate. These included Advantus, Comenity Bank, DirecTV, Navy FCU, and USAA.

Equifax understood Mr. Ma's disputes. Its records indicate that it deleted the "former name" Mary Williams from his credit file. However, it failed to delete the name

"Mary Anderson." Equifax then electronically transmitted Automated Consumer Dispute Verification (ACDV) forms to the various data furnishers. However, when it did so, Equifax indicated to each of the furnisher's that Mr. Ma's "AKA" or "former name" was "Anderson Mary" even though Mr. Ma had disputed that name in his dispute letter.

Some data furnishers responded with instructions to Equifax to delete the accounts from Mr. Ma's credit, but others did not. For example, Alliance Data (Comenity Bank) responded by advising Equifax that it's customer's name was Mary Anderson-Williams, and provided her correct address in Jacksonville, FL. This also occurred with respect to the Sears/CBNA and USAA Savings Bank accounts.

Additionally, while Equifax acknowledged that some of the accounts did not belong to Mr. Ma, it nevertheless refused to delete the related hard pull inquiries from his credit. For example, this happened with Comenity Bank and Navy FCU. An inquiry can reduce a consumer's credit score by 10 to 20 points.

Equifax sent Mr. Ma a letter that stated that some accounts had been deleted, but others had been "verified" by the data furnishers as accurate. Equifax also falsely represented to Mr. Ma that the name Mary Anderson were not being included on his credit file, when Equifax had used that very name to "verify" the false accounts, including Alliance Data (Comenity Bank).

Equifax failed to delete the name "Mary Anderson" and deleted some but not all of her accounts. Even as recently as August 5, 2016 – months after this case was filed – Equifax was still reporting a false collection account belonging to Ms. Anderson on Mr. Ma's credit report.

## Applicable Law

A. <u>The Fair Credit Reporting Act.</u>

The FCRA was the product of Congressional concern over abuses in the credit reporting industry. 15 U.S.C. § 1681; *Guimond v. Trans Union Credit Information Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995). Congress specifically noted that credit reporting agencies have "grave responsibilities" in the assembling of consumer credit and other information and must exercise those responsibilities with fairness, partiality and a respect for the consumer's right to privacy. 15 U.S.C. § 1681(a)(3) and (4).

B. <u>Section 1681e(b): Maximum Possible Accuracy.</u>

Section 1681e(b) provides that "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

"In order to make out a prima facie violation of section [1681e](b), the [Fair Credit Reporting] Act implicitly requires that a consumer must present evidence tending to show that a [consumer] reporting agency prepared a report containing 'inaccurate" information.'" *Cahlin v. Gen. Motors Acceptance Corp*., 936 F.2d 1151, 1156 (11th Cir. 1991); accord, *Guimond*, 45 F.3d at 1333. "The reasonableness of the procedures and whether the agency followed them will be jury questions in the overwhelming majority of cases." *Id.*

C. <u>Section 1681i: Reinvestigation of Disputed Information.</u>

Section 1681i imposes certain duties upon a consumer reporting agency each and every time it receives notice of a dispute from a consumer. As applicable in this case, Section 1681i requires a consumer reporting agency to: 1) conduct a reasonable reinvestigation of disputed information, pursuant to Section 1681i(a)(1)(A); 2) review and consider all relevant information submitted by the consumer, pursuant to Section 1681i(a)(4); 3) provide all relevant information received from the consumer to the original furnisher of the disputed information, pursuant to Section 1681i(a)(2)(B); and 4) delete information found to be inaccurate, incomplete or cannot be verified, pursuant to Section 1681i(a)(5)(A).

D. <u>Section 1681b: Impermissible Purpose.</u>

The FCRA strictly limits the circumstances in which a credit reporting agency can provide a consumer's information to a third party. See 15 U.S.C. § 1681b. Equifax failed to comply with Section 1681b by providing plaintiff's credit report to companies for transactions that involved the other consumer, rather than Mr. Ma. In *Andrews v. TRW, Inc.*, 225 F3d 1063 (9th Cir. 2000), the Ninth Circuit examined whether a credit reporting agency had a permissible purpose in providing a credit report on a consumer who was the victim of identity theft. The court held that the language in § 1681b limiting the furnishing of a credit report to a "credit transaction involving the consumer" should be interpreted so that it does not include a transaction initiated by an identity thief. 225 F.3d at 1067.

E. Actual Damages under the FCRA.

Mr. Ma may recover actual damages, including noneconomic damages and emotional distress damages caused by a negligent violation of the FCRA. 15 U.S.C. 1681o. *Levine v. World Financial Network Nat. Bank*, 437 F.3d 1118 (11th Cir. 2006). *Accord*, *Guimond*, *supra*, 45 F.3d at 1333.

Actual damages under the FCRA include humiliation or mental distress even if the consumer has suffered no out-of-pocket losses. *Sampson v. Equifax Info. Servs., LLC*, 2005 WL 2095092, at *4 (S.D. Ga. Aug. 29, 2005). (mental anguish constitutes a compensable harm under the FCRA, and emotional distress damages may be recovered even absent a denial of credit); Stevenson v. TRW, 987 F. 2nd 288, 297 (5th Cir 1993) (actual damages under the FCRA include humiliation or mental distress even if the consumer has suffered no out-of-pocket losses. In FCRA cases, a plaintiff is not required to produce evidence of emotional distress beyond his own testimony. *King v. Asset Acceptance, LLC*, 452 F. Supp. 2d 1272, 1281 (N.D. Ga. 2006) (citing *Moore v. Equifax Info. Serv., LLC,* 333 F.Supp.2d 1360, 1365 & n. 3 (N.D. Ga. 2004).

A plaintiff is not required to show "but for causation," but rather that Trans Union's violations were a "substantial factor" in causing his damages. *Philbin v. Trans Union Corp.,* 101 F.3d 957, 968 (3d Cir. 1996); *Khoury v. Ford Motor Credit Co.*, LLC, No. 13–11149, 2013 WL 6631471, at *6 (E.D.Mich. Dec. 17, 2013).

Mr. Ma applied for mortgage in order to buy a brand new newly built house in December 2015. His credit was flawless, he watched his spending, he had a little bit of savings, and he had a good job so that he can afford the payments. He was told his credit was no good and he couldn't get the house without making a 20% down payment because of accounts that were not his such as the Navy Federal Credit Union account. He went to a Navy Federal Credit Union and actually got a letter saying that he didn't have an account with them. He did not have months and months to try and fix his credit because the home-builder was offering incentives for buying a house by the end of December 2015. He spent many hours in December 2015 being angry, frustrated, embarrassed and helpless when he had earned the right to and should have been feeling proud and excited.

F. Punitive Damages under the FCRA.

Under Section 1681n, a consumer may seek punitive damages for a willful violation of the FCRA. The U.S. Supreme Court has held that "The [Ninth Circuit] Court of Appeals correctly held that reckless disregard of a requirement of FCRA would qualify as a willful violation within the meaning of § 1681n(a)." *Safeco Ins. Co. v. Burr*, 551

U.S. 47, 127 S.Ct. 2201, 2216, 167 L.Ed.2d 1045 (2007).

Courts have generally held that whether a consumer reporting agency has violated the FCRA willfully is an issue of fact to be determined by the jury. See, *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 620 (6th Cir. 2012) (fact issues remained as to whether lender acted recklessly in investigating dispute where policies provided for a cursory review); *Saunders v. Branch Banking & Trust Co.*, 526 F.3d 142, 148-50 (4th Cir. 2008).

## ATTACHMENT H-2

## DEFENDANT'S TRIAL BRIEF

The FCRA neither requires error-free credit reports nor imposes strict liability for an inaccurate credit report. *See, Cahlin v General Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991) ("[The FCRA], however, does not make [CRAs] strictly liable for all inaccuracies."); *Thompson v. San Antonio Retail Merchants Assoc.*, 682 F.2d 509, 513 (5th Cir. 1982) ("[s]ection 1681e(b) does not impose strict liability for any inaccurate credit report"); *see also* FTC Commentary on the FCRA, 16 C.F.R. Pt. 600, App. (stating the FCRA "does not require error-free consumer reports").

The FCRA requires that Defendants follow "reasonable procedures" to ensure the accuracy of the information it reports. 15 U.S.C. § 1681e(b); *Cahlin*, 936 F.2d at 1156-61 (no violation of FCRA if "an inaccurate report was generated by following reasonable procedures"). In order to succeed on his 15 U.S.C. § 1681e(b) claim, Plaintiff must show that: (1) Defendant prepared a report containing inaccurate information; (2) the inaccuracy was a result of Defendant's failure to follow reasonable procedures; (3) he suffered an injury; and (4) the failure was a proximate cause of the injury. *See Cahlin*, 936 F.2d at 1156-61.

FCRA § 1681i(a) states, "if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer," the agency must "conduct a reasonable reinvestigation to determine

whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file . . . ." 15 U.S.C. § 1681i(a)(1)(A). To prevail on a claim of negligent noncompliance with the FCRA § 1681i(a), Plaintiff must prove: (1) his credit report contains inaccurate or incomplete information; (2) he notified Equifax of the alleged inaccuracy; (3) the dispute is not frivolous or irrelevant; (4) Equifax failed to respond or conduct a reasonable reinvestigation of the disputed items; and (5) the failure to reinvestigate caused him to suffer actual damages. *Lazarre v. JPMorgan Chase Bank, N.A.*, 780 F. Supp. 2d 1330, 1334 (S.D. Fla. 2011) (citing *Bermudez v. Equifax Info. Servs., LLC*, No. 6:07–cv–1492–Orl–31GJK, 2008 WL 5235161, at *4 (M.D. Fla. Dec. 15, 2008)).

Section 1681b of the FCRA limits the circumstances under which consumer reporting agencies may furnish a "consumer report." *See* 15 U.S.C. § 1681b(a). To establish a claim under § 1681b, Plaintiff must show that (1) there was a consumer report; (2) the company used or obtained the report; (3) without a permissible purpose; and (4) Equifax acted negligently or willfully. *Perrill v. Equifax Information Services LLC*, 2016 WL 4572212, at *5 (W.D. Tex. Aug. 31 2016). Further, as relevant here, a report may be furnished regarding a consumer if the agency "has reason to believe" the report will be used for purposes of establishing consumer credit for the consumer to whom the report relates. 15 U.S.C. § 1681b(a)(3)(A).

Another essential element of establishing an FCRA claim is evidence that Plaintiff

suffered an injury and that the injury was caused by Equifax's FCRA violation. *See Smith v. E-Backgroundchecks.com, Inc.*, 81 F. Supp. 3d 1342, 1365 (N.D. Ga. 2015) ("Damages are an element of [an FCRA] claim, and without evidence of damages, summary judgment is appropriate."). To establish a claim under the FCRA, the plaintiff bears the burden of proving "that he was damaged as the result of an allegedly inaccurate [] credit report." *Cahlin*, 936 F.2d at 1160-61 (emphasis added).

To establish willful noncompliance with the FCRA, the consumer must show, at a minimum, that the defendant acted in "reckless disregard of its statutory duty." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007). Equifax's actions do not remotely rise to the level of recklessness, which, under *Safeco*, is "conduct violating an objective standard: action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Safeco*, 551 U.S. at 56.

Equifax anticipates that Plaintiff may seek to introduce evidence of past cases against Equifax to show that Equifax has been on notice of the problems associated with mixed files. Equifax will be filing a motion in limine to exclude the evidence. In sum, it should be excluded because it is not relevant, and even if it were relevant, it is inadmissible prior acts evidence. *See* Fed. R. Evid. 401, 404(b)(1); *see also*, *Phillips v. Palubicki*, 91 F.3d 154, 1996 WL 393516, *1 (9th Cir. 1996) (Table) (affirming district court's exclusion of evidence of past investigations and lawsuits under Rule 404(b)). Evidence of prior cases, which differ from Plaintiff's case, is far more prejudicial and

confusing than it is probative. *See* Fed. R. Evid. 403; *see also Turner v. Univ. of Wash.*, No. C05-1575RSL, 2007 WL 2984684, *1 (W.D. Wash., Oct. 10, 2007) (excluding evidence of prior lawsuit because marginal probative value was substantially outweighed by risk of unfair prejudice and confusion); *Williams v. Asplundh Tree Expert Co.*, No. 3:05-cv-479-J-33MCR, 2006 WL 2868923, at *2 (M.D. Fla. Oct. 6, 2006) (ruling that prior lawsuits against the defendant should be excluded: they were minimally probative, and the risk of unfair prejudice substantially outweighed any probative value); *Johnson v. Land O'Lakes, Inc.*, 181 F.R.D. 388, 390 (N.D. Iowa 1998) (concluding evidence of prior lawsuits "only marginally relevant, and if relevant at all, is unfairly prejudicial because it presents serious potential for confusion and for decisions on an improper basis, such as conformance with other cases, rather than upon evaluation of the evidence and arguments in this case.")

Equifax also anticipates that Plaintiff may seek to introduce evidence concerning Equifax's net worth or other financial information. Equifax will be filing a motion in limine to exclude the evidence. Plaintiff should not be permitted to introduce any financial information regarding Equifax and should be prevented from making any reference to its financial condition during trial. Introduction of this financial information is irrelevant as to whether Equifax violated the FCRA, and it would be inappropriate and highly prejudicial to present such evidence prior to the close of Plaintiff's case and without first providing Equifax the opportunity to be heard on its motion for directed verdict on

willfulness or punitive damages. Fed. R. Evid. 403; *see also 999 v. C.I.T. Corp.*, 776 F.2d 866, 872 (9th Cir. 1985) (holding that presentation of evidence of financial position of defendant is distracting and prejudicial to the jury absent a prima facie case of malice). It would be inappropriate for any judgment on compensatory damages against Equifax to be fashioned around its ability to pay damages because such information "injects into the damage determination a foreign, diverting and distracting issue [that] may effectuate a prejudicial result." *Geddes v. United Financial Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) (trial court erred in relying on defendants' financial condition in fashioning judgments).

The Supreme Court has identified three guideposts courts must consider when determining the amount of punitive damages: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003) (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996)); accord *Bennett v. Am. Med. Response, Inc.*, 226 F. App'x 725, 728 (9th Cir. 2007); *Bains LLC v. Arco Products Co., Div. of Atl. Richfield Co.*, 405 F.3d 764, 775 (9th Cir. 2005). None of these guideposts are associated with a company's net worth, and the Supreme Court has repeatedly cautioned lower courts about the pitfalls of reliance on net worth for establishing punitive damages, especially when, as here, large companies are involved. *See*, *e.g.*, *State Farm*, 538 U.S. at

417 ("the presentation of evidence of a defendant's net worth creates the potential that juries will use their verdicts to express biases against big businesses"); *Gore*, 517 U.S. at 591 (Breyer, J., concurring) (consideration of "financial position" "provides an open-ended basis for inflating awards when the defendant is wealthy"); *TXO Prod. Corp. v. Alliance Res. Corp.*, 509 U.S. 443, 464 (1993) (plurality opinion) (observing that emphasis on a defendant's wealth may cause punitive damages to be influenced by anti-corporate prejudice); id., 509 U.S. at 492 (O'Connor, J., dissenting, joined by Souter and White, JJ.) (noting that courts "must have authority to recognize the special danger" created by jury consideration of wealth evidence). Instead, the Court's focus has been on the defendant's constitutional rights to fair notice of possible penalties and to be free from the "the imposition of grossly excessive or arbitrary punishments." *State Farm*, 538 U.S. at 416.

**ATTACHMENT I-1**
Plaintiff's Proposed Verdict Form

We, the jury, being duly empaneled and sworn to try the above-entitled case, do find as follows:

1.     Has plaintiff proved by a preponderance of the evidence that defendant negligently failed to comply with one or more of the requirements of the Fair Credit Reporting Act?

YES_____          NO_____

Go to Question No. 2

2.     Has plaintiff proved by a preponderance of the evidence that defendant willfully failed to comply with one or more of the requirements of the Fair Credit Reporting Act?

YES_____          NO_____

If your answer to Questions No. 1 and No. 2 are "no," your verdict is for defendant, and the presiding juror should date and sign this form and you must NOT respond to any more questions below.  If your answer is "yes" to either Question No. 1 or 2, then go to Question No. 3.

3.     What is the total amount of actual damages caused by defendant's failure to comply with the Fair Credit Reporting Act?

$_____

If your answer to Question No. 2 is "no," then you should not answer Question No. 4,

your deliberations are complete, and the presiding juror should date and sign this form.  If your answer to Question No. 2 is "yes" then answer Question No. 4.

4.      What amount of punitive damages, if any, should be awarded against Equifax because of its willful failure to comply with the Fair Credit Reporting Act?

$_____

Dated this _____ day of _____, 2017.

_____

PRESIDING JUROR

_____

## ATTACHMENT I-2

## DEFENDANT'S PROPOSED VERDICT FORM

Defendant, Equifax, requests the following special verdict form:

We, the jury, being duly empaneled and sworn to try the above-entitled case, do find as follows:

## QUESTIONS AS TO DEFENDANT EQUIFAX INFORMATION SERVICES:

1. Has plaintiff proved by a preponderance of the evidence that Equifax failed to comply with one or more of the requirements of the Fair Credit Reporting Act ("FCRA")? You must be in unanimous agreement as to which of the FCRA requirements Equifax violated.

   a. ***FCRA § 1681e(b).*** We, the jury, unanimously find, by a preponderance of the evidence, that Equifax

   *[You must check either (i), (ii), or (iii).]*

   i. ____ did not negligently or willfully violate FCRA § 1681e(b).

   ii. ____ did negligently violate FCRA § 1681e(b).

   iii. ____ did willfully violate FCRA § 1681e(b).

   b. ***FCRA § 1681i.*** We, the jury, unanimously find, by a preponderance of the evidence, that Equifax

   *[You must check either (i), (ii), or (iii).]*

   i. ____ did not negligently or willfully violate FCRA § 1681i.

ii. ____ did negligently violate FCRA § 1681i.

iii. ____ did willfully violate FCRA § 1681i.

If you checked (i) on Questions No. 1(a) and (b)), your verdict is for Equifax, and the presiding juror should date and sign this form and you must NOT respond to any more questions below. If you checked either (ii) or (iii) for either Question No. 1(a) or (b), then go to Question No. 2.

2. Has plaintiff proved by a preponderance of the evidence that Equifax caused him to suffer economic damages as a result of its violation of the Fair Credit Reporting Act as found above?

YES_____          NO_____

If your answer to Question No. 2. is "no," then go to Question No. 4. If your answer to Question No. 2 is "yes," then go to Question No. 3 and then go to Question No. 4.

3. What is the total amount of money that will reasonably compensate plaintiff for economic damages caused by Equifax's failure to comply with the Fair Credit Reporting Act?

$_____

4. Has plaintiff proved by a preponderance of the evidence that Equifax caused him to suffer emotional damages as a result of its violation of the Fair Credit Reporting Act as found above?

YES_____          NO_____

If your answer to Question No. 4 is "no" and your answer to Question No. 2 is "no," then your deliberations are complete and the presiding juror should date and sign this form. If your answer to Question No. 4 is "yes," then go to Question No. 5.

5. What is the total amount of money that will reasonably compensate plaintiff for emotional damages caused by Equifax's failure to comply with the Fair Credit Reporting Act?

$_____

Your deliberations are complete, and the presiding juror should date and sign this form.

Dated this _____ day of _____, 2017.

_____
PRESIDING JUROR

## QUESTIONS AS TO DEFENDANT EQUIFAX INFORMATION SERVICES:

(Should there be a finding by the jury that Equifax "willfully" violated the Fair Credit Reporting Act, then Equifax requests that the Court bifurcate the quantification of punitive damages from the trial on liability and compensatory damages, and present the following special verdict form:)

1.      What amount of punitive damages, if any, should be awarded to plaintiff because of Equifax's willful failure to comply with the Fair Credit Reporting Act?

$_____

Dated this _____ day of _____, 2017.


PRESIDING JUROR