# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DARRELL L. TAYLOR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-16-39-D |
| ) | |
| EQUIFAX INFORMATION ) | |
| SERVICES, LLC, ) | |
| ) | |
| Defendant. ) | |

## **ORDER**

Before the Court is Defendant's Motion to Exclude or Limit the Testimony of Plaintiff's Expert, Evan Hendricks and Brief in Support [Doc. Nos. 35-36]. Plaintiff has filed his response in opposition [Doc. No. 37] and Defendant has replied [Doc. No. 38]. The matter is fully briefed and at issue. Based on the evidence in the record, the Court finds a formal hearing on Defendant's Motion is unnecessary. *See United States v. Nacchio*, 555 F.3d 1234, 1253-54 (10th Cir. 2009) ("Tenth Circuit cases have interpreted *Kumho Tire's* directive that courts must have leeway in applying the *Daubert* framework to mean that although *Daubert* hearings are the most common way to fulfill the gatekeeper function, 'such a process is not specifically mandated.'") (citations omitted); *see also Ho v. Michelin N. Am., Inc.*, 520 F. App'x 658, 664 (10th Cir. 2013) (unpublished) (court properly exercised its discretion in

EXHIBIT D TO DEFENDANT'S MOTION TO EXCLUDE

issuing *Daubert* ruling without formal hearing due to number of expert reports, deposition transcripts, and other evidence that accompanied the parties' arguments).

## BACKGROUND

Plaintiff brings this action under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, alleging that Defendant prepared and sold consumer credit reports which contained false and derogatory accounts and information about him. Plaintiff contends that, despite numerous attempts to get a complete and accurate report, Defendant failed to conduct reasonable investigations of Plaintiff's disputes and permanently delete erroneous accounts and information. In support of his claims, Plaintiff retained Evan Hendricks as an expert witness.

Hendricks received his Bachelor of Arts Degree from Columbia College, Columbia University in 1979. He devotes his professional time to serving as an expert witness in FCRA and identity theft cases. He was formerly the editor/publisher of *Privacy Times*, a biweekly publication that was started in 1981 and reported on privacy and information law. He was also formerly a privacy consultant to the Social Security Administration and member of the Experian Consumer Advisory Council. On several occasions, Hendricks provided testimony before Congress and the Federal Trade Commission on matters concerning credit and privacy issues. He has published books on, *inter alia*, educating consumers on matters regarding privacy rights and how credit reports and credit scores are used.

EXHIBIT D TO DEFENDANT'S MOTION TO EXCLUDE

Notably, on prior occasions, Hendricks has provided expert testimony in similar lawsuits against Defendant. *See* Expert Witness Report of Evan Hendricks (hereinafter "Hendricks Report") at 15 [Doc. No. 36-1]. Moreover, he has been admitted as an expert in numerous FCRA/identity theft cases across the United States.

As summarized below, Hendricks offers the following opinions regarding Plaintiff's case:

1) One of the most well-known and long-standing causes of credit report inaccuracy is the "mixed file," which is a consumer report in which some or all of the information pertains to a person or persons other than the person who is the subject of the report. A common cause of mixed files is similarity of key identifiers such as Social Security number and name. Common examples of mixed files involve family members with the same or similar names and similar social security numbers;

2) Plaintiff had several telltale signs of mixed and/or multiple files, which should have become obvious to Defendant after his reported disputes;

3) Defendant caused Plaintiff to become a victim of a mixed file, and then failed to correct some of the inaccuracies it caused because it failed to reinvestigate adequately;

4) Because of similarities in name and Social Security numbers between Plaintiff and his brother, Defendant merged their information, despite the men having different social security numbers, first names, birthdates, addresses and cities;

5) For Defendant to reasonably reinvestigate inaccuracies caused by mixed files, it is first necessary that its dispute operators consistently recognize and/or diagnose a dispute relating to a mixed file. Defendant failed to properly diagnose that Plaintiff

EXHIBIT D TO DEFENDANT'S MOTION TO EXCLUDE

was a victim of a mixed file despite the evidence in its possession;

6) Defendant unreasonably delayed or avoided reinvestigating Plaintiff's disputes by repeatedly demanding that he provide proof of identity, even though he previously had provided it;

7) Defendant's procedures were not adequate for assuring maximum possible accuracy;

8) Defendant's inadequate procedures for assuring accuracy resulted in Defendant failing to live up to its duty to provide Plaintiff with all of the information in his file when he requested his file;

9) Defendant has a history of failing to be adequately responsive to consumers disputing errors, as evidenced by previous enforcement actions/consent agreements by the Federal Trade Commission (FTC) in the 1990s and other cases in which Hendricks served as a plaintiff's expert against Defendant;

10) Even when there were important signs of a wrongful "mix," Equifax disregarded the need to emphasize to its dispute operators that they focus on discrepancies in identifying information such as social security numbers, birthdates, addresses, cities, and names;

11) Defendant refused to change practices and procedures of which it was repeatedly notified were not reasonably calculated to effectuate adequate reinvestigations of mixed files disputes; and

12) The damages suffered by Plaintiff were consistent with those experienced by other victims and were, or should have been, foreseeable to Defendant.

Hendricks Report at 1-3.

Defendant dismisses Hendricks' opinions on its assertion that he is a "professional testifier with an axe to grind." Mot. at 1. It contends Hendricks' report

4

EXHIBIT D TO DEFENDANT'S MOTION TO EXCLUDE

Case 5:16-cv-00539-M Document 41-5 Filed 07/18/17 Page 5 of 13

is inadmissible because (1) Hendricks is unqualified to give the proffered opinions; (2) Hendricks' report is unreliable; (3) Hendricks' opinions will not assist the trier of fact; and (4) alternatively, Hendricks' proffered testimony should be limited in certain respects.

## STANDARD OF DECISION

Courts have broad discretion in determining the admissibility of expert testimony. *Taylor v. Cooper Tire & Rubber Co.*, 130 F.3d 1395, 1397 (10th Cir. 1997). A district court also has broad discretion to decide "how to assess an expert's reliability, including what procedures to utilize in making that assessment, as well as in making the ultimate determination of reliability." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1223 (10th Cir. 2003) (citations omitted). The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the Supreme Court's opinions in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). *See James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1215 n. 1 (10th Cir. 2011) ("If expert testimony is not reliable under *Daubert/Kumho*, it is not admissible under Rule 702").

Rule 702 imposes upon the trial judge an important "gate-keeping" function with regard to the admissibility of expert opinions. It provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

EXHIBIT D TO DEFENDANT'S MOTION TO EXCLUDE

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. In considering whether a putative expert's opinion is admissible, the Court performs a two-step analysis. First, the court determines whether the expert is qualified by knowledge, skill, experience, training or education to render the opinion that the would-be expert offers. Second, if the expert is so qualified, the Court must decide whether the expert's opinion is reliable under the principles set forth in *Daubert* and *Kumho* and would assist the fact finder. *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006); *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001).[1]

"The *Daubert* factors are 'meant to be helpful, not definitive,' and not all of the factors will be pertinent in every case." *United States v. Baines*, 573 F.3d 979, 992 (10th Cir. 2009) (quoting *Kumho Tire*, 526 U.S. at 150-51). Thus, in non-

---

[1] The reliability of an expert's methodology is evaluated with the following nonexhaustive set of factors set forth in *Daubert*: (1) whether the expert's technique or theory can be and has been tested; (2) whether the theory has been subject to peer review and publication; (3) whether the method has a high known or potential rate of error of the technique or theory when applied and if there are standards and controls controlling the method's operation; and (4) whether the method is generally accepted in a relevant scientific community. *Kumho Tire*, 526 U.S. at 149-50; *103 Investors*, 470 F.3d at 990 (citing *Daubert*, 509 U.S. at 593-94).

EXHIBIT D TO DEFENDANT'S MOTION TO EXCLUDE

scientific cases, the *Daubert* factors "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire*, 526 U.S. at 150. The inquiry is always, and of necessity, highly fact-specific, and no one factor, even when applicable, is outcome-determinative. Accordingly, "the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." *Kumho Tire*, 526 U.S. at 142 (citing *General Electric Co. v. Joiner*, 522 U.S. 136, 143 (1997)).

## DISCUSSION

### I

Defendant first argues that Hendricks is not qualified to testify regarding its policies and procedures and Plaintiff's damages as Hendricks (1) has neither worked for a credit reporting agency nor claims to have any education or training related to operating a consumer reporting agency; (2) has never tested any of his theories or subjected them to peer review; (3) does not have the requisite skill to test a computer program designed to match consumer credit information; (4) has never developed policies or procedures for maintaining consumer-reporting accuracy; and (5) has no experience handling consumer disputes.

The Court finds that Defendant's objections on this issue should be overruled in part, in that they largely go to the weight of Hendricks' testimony as opposed to

EXHIBIT D TO DEFENDANT'S MOTION TO EXCLUDE

its admissibility. Hendricks has gained significant experience regarding the practices of credit reporting agencies, including Defendant (primarily related to credit reporting/dispute resolution), has authored books on the subject matter, and provided testimony before Congress and other governmental agencies regarding related subjects. As noted above, Hendricks has provided expert testimony against Defendant on several occasions in which he was provided access to Defendant's internal practices and procedures. *See* Pl. Resp. at 4-5. "[T]he text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience." Fed. R. Evid. 702, advisory committee's note to 2000 amendment. The accumulation of these experiences, in the Court's view, renders Hendricks capable of testifying on the reasonableness of Defendant's conduct in the present case. Defendant is free to cross examine Hendricks on whatever deficiencies it feels lie within his testimony. As noted above, rejection of expert testimony is the exception rather than the rule, and vigorous cross-examination, presentation of contrary evidence, and proper jury instructions on the burden of proof are the traditional and appropriate means of attacking allegedly shaky but admissible evidence. *See Daubert*, 509 U.S. at 595-96.

With respect to Plaintiff's damages, however, the Court finds that Hendricks' testimony should be restricted to discussing the adverse consequences of credit report inaccuracies. Insofar as Hendricks purports to provide substantive expert testimony on the categories of damages requested in Plaintiff's Complaint (actual,

8

EXHIBIT D TO DEFENDANT'S MOTION TO EXCLUDE

punitive, and statutory damages), such testimony will not be allowed by this witness. Hendricks does not hold himself out as a damages expert and nothing in the materials before the Court support such a conclusion. Accordingly, Defendant's Motion on this issue is granted in part.

## II

Defendant next contends Hendricks' testimony regarding its conduct is unreliable and will not assist the jury. Specifically, Defendant contends Hendricks' testimony is unreliable because he did not apply any particular methodology in forming such opinions nor is there any evidence his method has been tested or subjected to peer review. Defendant also asserts various criticisms of Hendricks' testimony in support of its contention that it will not aid the trier of fact.

As noted, the Court has examined the Hendricks Report and believes Defendant's objections largely go to the weight of his opinions as opposed to their admissibility. The *Daubert* factors are meant to be helpful, not definitive, and do not apply in every case. *Baines*, 573 F.3d at 992. Thus, in non-scientific cases, such as the present, the relevant reliability concerns may focus on the expert's personal knowledge or experience. *Kumho Tire*, 526 U.S. at 150. Nevertheless, the "touchstone" of admissibility under Rule 702 is helpfulness to the trier of fact. *Daubert*, 509 U.S. at 591-92; *Thompson v. State Farm Fire and Cas. Co.*, 34 F.3d 932, 941 (10th Cir. 1994) (citing *Werth v. Makita Elec. Works, Ltd.*, 950 F.2d 643,

9

EXHIBIT D TO DEFENDANT'S MOTION TO EXCLUDE

648 (10th Cir. 1991)). In this regard, the Court finds Hendricks' testimony would indeed be helpful to a trier of fact. "*Daubert* did not work a 'seachange over federal evidence law,' and 'the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system.'" Fed. R. Evid. 702, advisory committee's note to 2000 amendment. Only "if an expert opinion is so fundamentally unsupported that it can offer no assistance to the jury" must such testimony be excluded. *Hose v. Chicago Northwestern Transp. Co.*, 70 F.3d 968, 974 (8th Cir. 1995). Hendricks has attained unique and specialized expertise regarding the conduct at issue in this case, and the Court is unwilling to find that despite such extensive experience, Hendricks' opinions are so "fundamentally unsupported" as to be of no use to a trier of fact. Again, any discrepancies or deficiencies Defendant feels exist in Hendricks' testimony may appropriately be explored during cross examination.

Moreover, the Court disagrees with Defendant's assertion that Hendricks' testimony usurps the trier of fact's role – in other words – that he essentially instructs a judge or jury how to decide the case. Under Rule 704(a), the fact that an expert opines on an issue ultimately to be decided by the jury does not necessarily make it objectionable. "However, 'an expert may not 'simply tell the jury what result it should reach [;]' he or she must explain the basis for any summary opinion.' " *United*

EXHIBIT D TO DEFENDANT'S MOTION TO EXCLUDE

*States v. Schneider*, 704 F.3d 1287, 1293 (10th Cir. 2013) (quoting *United States v. Dazey*, 403 F.3d 1147, 1171 (10th Cir. 2005)).

In his report, Hendricks explained his knowledge of credit report inaccuracies and Defendant's alleged actions in this case. He then expressed the opinion that Defendant's failure to reasonably investigate the alleged inaccuracies at issue resulted in Plaintiff receiving an erroneous report and explained at length the basis for that opinion. *See* Hendricks Report at 1-2, 7-10. The Court finds that Hendricks' opinion is consistent with the Tenth Circuit's instruction in *Schneider*, and that it leaves room for the trier of fact to exercise independent judgment as to whether Defendant's conduct caused the complained of harm. *See Schneider*, 704 F.3d at 1294 (holding expert testimony that stated medical clinic "was at fault" for illegal drug distribution and doctor "engaged in health care fraud" was admissible, where experts explained at great length their observations from evidence, and summarized their findings).

## III

Lastly, and as an alternative form of relief, Defendant requests that Hendricks' testimony be limited in that the Court preclude any references to (1) prior verdicts against Defendant in other credit reporting cases, (2) twenty-year old consent decrees entered into by Defendant, and (3) other administrative actions against Defendant. Defendant contends the proposed testimony is not relevant and any

EXHIBIT D TO DEFENDANT'S MOTION TO EXCLUDE

minimal probative value is outweighed by the prejudicial impact it would have on Defendant. Mot. at 21.

On this issue, Defendant's Motion falls more appropriately under the standard governing motions in limine in that it asks the Court to rule on the relevance/admissibility of forecasted evidence in advance of trial. *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1218 (D. Kan. 2007). Under this standard, "a court is almost always better situated during the actual trial to assess the value and utility of evidence. Consequently, a court should reserve its rulings for those instances when the evidence plainly is 'inadmissible on all potential grounds'. . . and it should typically defer rulings on relevancy and unfair prejudice objections until trial when the factual context is developed[.]" *Id.* (citations omitted); *see also Hawthorne Partners v. AT & T Tech., Inc.*, 831 F.Supp. 1398, 1400 (N.D. Ill. 1993) ("Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context."). Due to the factual dispute surrounding the relevancy of the foregoing evidence, a ruling on this issue is deferred until the record is more fully developed at trial.

## CONCLUSION

Defendant's Motion to Exclude or Limit the Testimony of Plaintiff's Expert, Evan Hendricks and Brief in Support [Doc. Nos. 35-36] is **GRANTED IN PART**

EXHIBIT D TO DEFENDANT'S MOTION TO EXCLUDE

and **DENIED IN PART** as set forth herein. With respect to the aforementioned reserved rulings, the Court cautions counsel to approach the bench and seek a ruling before eliciting any challenged evidence or testimony.

**IT IS SO ORDERED** this **19th** day of July 2017.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE

EXHIBIT D TO DEFENDANT'S MOTION TO EXCLUDE