IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| FOLEY MA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action |
| v. | ) | |
| | ) | No. 1:16-cv-01055-LMM-CMS |
| EQUIFAX INFORMATION | ) | |
| SERVICES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S
MOTION TO EXCLUDE OR LIMIT EXPERT WITNESS TESTIMONY**

Evan Hendricks is one of the foremost experts in the nation on the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 et seq. He has been admitted to testify at trial by numerous courts around the country to help juries understand the complex, misunderstood, and incredibly opaque credit reporting industry, including defendant's procedures, policies, and standards. Mr. Hendricks has been recognized as an expert in the credit reporting industry by the Federal Trade Commission, by Congress, ***and indeed by Equifax***.

Mr. Hendricks' testimony is necessary to help the jury to understand the inner workings of the credit reporting industry, which is hidden and kept confidential from the public. As other courts have noted, Mr. Hendricks' testimony will also place Mr. Ma's experience within the context of the prevalence of credit

reporting inaccuracies like those in this case, Equifax's policies and procedures, and repeated notice to Equifax that it was not complying with the FCRA.

Most recently, the Honorable Timothy Digiusti of the Western District of Oklahoma concluded that Mr. Hendricks was qualified to testify in a case involving Equifax, limiting only a small portion of Mr. Hendricks's testimony relating to damages. *Taylor v. Equifax Information Services, LLC*, CIV-16-39-D, [This is our case number, I don't think it is this case number] (W.D. Okla. July 19, 2017). Judge Digiusti noted:

> Hendricks has gained significant experience regarding the practices of credit reporting agencies, including Defendant (primarily related to credit reporting/dispute resolution), has authored books on the subject matter, and provided testimony before Congress and other governmental agencies regarding related subjects. As noted above, Hendricks has provided expert testimony against Defendant on several occasions in which he was provided access to Defendant's internal practices and procedures. See Pl. Resp. at 4-5. "[T]he text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience." Fed. R. Evid. 702, advisory committee's note to 2000 amendment. The accumulation of these experiences, in the Court's view, renders Hendricks capable of testifying on the reasonableness of Defendant's conduct in the present case. Def's Ex. D at p. 8.

For the reasons set forth below, the Court should deny defendant's motion to exclude Hendricks' testimony.

\\\ \\\ \\\

\\\ \\\ \\\

\\\ \\\ \\\

## I.  MR. HENDRICKS IS QUALIFIED AND HIS OPINIONS ARE RELIABLE BECAUSE OF HIS SPECIALIZED KNOWLEDGE AND EXPERIENCE.

A. Standard for Specialized Knowledge and Experience.

Under FRE 702, an expert may be qualified because of specialized knowledge, skill, experience, training or education. The basis for expert testimony may focus on personal knowledge or experience. *Kumho Tire Company, Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999). The Rule 702 inquiry is flexible because there are many different kinds of experts, and many different kinds of expertise. *Id.*, *citing, Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 594 (1993). "In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony". FRE 702 Committee Notes.

"There are instances in which a district court may determine the reliability prong under Daubert based primarily upon an expert's experience and general knowledge in the field." *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1336 (11th Cir.2010) citing *United States v. Brown*, 415 F.3d 1257 (11th Cir.2005). Moreover, "*Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Brown*, 415 F.3d at 1257.

Determining whether a witness is qualified to testify as an expert "requires the trial court to examine the credentials of the proposed expert in light of the subject matter of the proposed testimony." *Jack v. Glaxo Wellcome, Inc.*, 239

F.Supp.2d 1308, 1314-16 (N.D.Ga. 2002) (stating that the court's finding that the proposed expert was "well-trained, highly educated, and experienced," and possessed an "extremely impressive professional track record" with respect to his specialty "does not obviate the need for a more thorough analysis of whether [the expert] is qualified and competent to testify as an expert as to the subject matter of his proposed testimony"). This determination is left primarily to the discretion of the district court. *Id*. at 1314.

In *Haynes v. Lawrence Transp. Co*., 2015 WL 5601942 (N.D. Ga. March 24, 2015), this Court noted:

> "In the end, although rulings on admissibility under *Daubert* inherently require the court to conduct an exacting analysis of the proffered expert's methodology, it is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Technology DC–8, Inc. v. Hurel Dubois UK Ltd*., 326 F.3d 1333, 1341 (2003) (internal citations and quotations omitted). "Quite the contrary, vigorous cross-examination, presentation of contrary evidence and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id*. (internal citations and quotations omitted). 2015 WL 5601942, *2.

B. Numerous Other Courts Have Admitted Mr. Hendricks to Testify.

Mr. Hendricks has been admitted at trial as an expert by numerous courts. A list of the cases in which he has testified as an expert is included with his expert report. Def's Ex. A.

In 2013, the Honorable Anna J. Brown, United States District Judge (D. Ore.), conducted a Rule 104 hearing in a remarkably similar case against Equifax,

and concluded that Mr. Hendricks' testimony satisfied the requirements of *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 594 (1993). Judge Brown rejected Equifax's arguments, which are virtually identical here. Judge Brown succinctly explained:

> I think Mr. Hendricks, by virtue of his long experience as a consumer advocate, who has had the kind of access he describes to information that's not generally publicly available, about how credit reporting agencies function and how they respond to disputes and complaints by consumers, does in fact have specialized knowledge about the consumer -- I'm sorry, the credit reporting agency industry, if you will. * * * This is a person who does have a unique, it appears to me -- a unique -- I'm struggling with finding the right word. Reservoir of data and information about how consumer -- I'm sorry -- credit reporting agencies function. Information jurors just would not know on their own. *Miller* Pretrial Tr., Ex. A at p. 61-62.

In 2014, the Honorable Virginia Emerson Hopkins, United States District Judge (N.D. Ala.), admitted Mr. Hendricks to testify in a case involving credit information furnished by JP Morgan Chase Bank. There, the court wrote:

> Consistent with the qualification principles outlined in Frazier, the court find that Mr. Hendricks's substantial experience in the fields of consumer information generally and credit reporting more specifically renders him qualified to testify about Chase's noncompliance with its loan servicing and credit reporting practices and procedures, including his years of accumulated internal data regarding Chase, the way Chase maintains, uses, and discloses information, how that relates to credit reporting on a consumer, and how that impacts on the credit reputation of consumers, like Ms. Barnett.
>
> Relatedly, the court determines that Mr. Hendricks is qualified to testify about industry practices, including how credit reporting agencies function and how they respond to disputes and complaints by consumers. Mr. Hendricks is similarly qualified to testify about the nature and purpose of

credit, credit reports, and credit scores. *Barnett* Order on Motions in Limine, Ex. F at p. 7-8.

In 2015, the Honorable Mark E. Walker, United States District Judge (N.D. Fla.), admitted Mr. Hendricks to testify in a case involving a lesser known credit reporting agency, First Advantage LNS Screening Solutions. Judge Walker noted:

> Mr. Hendricks possesses vast experience on privacy matters. He owned, edited and published a newsletter for over 30 years covering the field of information law and privacy. His interaction with industry players and his testimony in numerous other cases have made him intimately familiar with industry reporting standards. His intended testimony goes precisely to the content of the industry standards. In short, this Court finds, as many other courts have, that Mr. Hendricks' experience qualifies him as an expert on consumer reports, the accuracy of data reporting and industry standards pertaining to FCRA compliance. *Williams* Order on Motions in Limine, Ex. E at p. 5-6.

Mr. Hendricks has been admitted and has testified in seventeen FCRA trials just since 2005:

- *Miller v. Equifax Information Services, LLC*, D. Or., Case No. 3:11-CV-1231-BR

- *Drew v. Equifax Information Services, LLC*, N.D. Cal., Case No. C-07-00726-SI

- *Campbell v. Experian Information Solutions*, W.D. Mo., Case No. 07-2514

- *Gamby v. Equifax Information Services*, E.D. Mich., Case No. CV-06-11020-MO

- *Adams v. National Engineering Service Corp./Verifications Inc.*, D. Conn., Case No. 3:07-cv-01035-JCH

- *Holmes vs. TeleCheck Intl., Inc.*, M.D. Tenn., Case No. 3:05-0633

- *Terry v. Star Consulting*, Prince George's County Cir. Ct., Maryland

- *Williams v. Equifax Information Services*, Orange County Cir. Ct., Florida, Case No. 48-2003-CA-9035

- *Valentine v. Equifax Information Services*, D. Or., Case No. CV-05-801-JO

- *Robinson v. Equifax Information Services*, E.D. Va., Case No. 1:06-cv-1336

- *Cortez v. Trans Union*, E.D. Pa., Case No. 2:05-CV-05684-JF

- *Sloane v. Equifax Information Services*, E.D. Va., Case No. 1:05-cv-1272

- *Kirkpatrick v. Equifax Information Services*, D. Or., Case No. CV-02-1197-MO

- *Toler v. Experian Information Solutions, Inc.*, W.D. Ark, Case No. 12-6032

- *Macik v. JP Morgan Chase Bank, N.A.*, S.D. Tex., Case No. 3:14-CV-44

- *Williams v. First Advantage LNS Screening Solutions, Inc.*, N.D. Fla. Case No. 1:13cv222-MW/GRJ

- *Zabriskie v. Federal National Mortgage Association*, D. Ariz. Case No. CV-13-02260-PHX-SRB

- *Neal v. Ford Motor Credit Company, LLC*, W.D. Mo. Case No. 6:15-cv-03474-MDH

  C. <u>Mr. Hendricks has become an Expert on the Credit Reporting Industry through More than Three Decades of Research and Reporting.</u>

Mr. Hendricks' specialized experience and knowledge goes beyond his involvement in dozens of FCRA cases. Mr. Hendricks has closely studied the credit reporting industry for more than 35 years. He has published the *Privacy*

*Times* newsletter, which monitors the credit reporting industry, since 1981. In 2004, Mr. Hendricks authored the authoritative book on credit reporting: *Credit Scores and Credit Reports: How the System Really Works, What You Can Do* (Privacy Times 2004). Mr. Hendricks' book, nearly 400 pages in length, contains chapters specifically addressing the issues in this case, including mixed or merged files, and the failures of credit reporting agencies to correct errors.

    D. <u>Mr. Hendricks Has Acquired Extensive Knowledge Despite the Secrecy Maintained by the Credit Reporting Industry.</u>

The credit reporting industry tries to maintain tight control over the operations of the industry. Three large national companies dominate the field, and they protect their companies' methods and processes very carefully. An outsider is simply not allowed access to their operations. Indeed, documents related to Equifax's policies and procedures in this case, as well as proprietary and confidential documents were produced subject to a protective order entered in this case. For that reason, Mr. Hendricks is nearly unique in his knowledge and understanding.

Through Mr. Hendricks' role as an expert witness in dozens of credit reporting cases, he has reviewed countless deposition transcripts from employees of credit reporting agencies. He has examined thousands of pages of the agencies' internal documents. Access to this volume of information is nearly impossible for anyone other than a credit reporting agency employee. This information is not

available to the public because of the credit reporting agencies' policies to demand that testimony and documents be placed under protective orders. In *Kirkpatrick,* Judge Mosman found Mr. Hendricks' knowledge of the internal processes of credit reporting agencies to be a particularly important body of knowledge that would otherwise be kept from the jury.

Moreover, only an expert like Mr. Hendricks can assimilate this huge body of knowledge into a useful context, based on his experience with industry groups and with Congressional hearings on the credit reporting industry. The *Kirkpatrick* court explicitly recognized this aspect of Mr. Hendricks' experience in ruling his testimony was admissible and helpful to the jury. Judge Mosman noted Mr. Hendricks' study and research in the field, as well as his access to deposition testimony and other information that is not available to the public.

> "The sources of his study are sufficient to qualify him as an expert both with regard to what he has read, and that includes not only his own paper that he puts out, but the deposition testimony is a sufficiently precise and unavailable source of expertise that it would be helpful to the jury to hear from someone who has assimilated that sort of information." *Kirkpatrick* Pretrial, Ex. D at p. 3.

Mr. Hendricks has also been qualified by the Court of Appeals in an FCRA case brought against TRW, the predecessor of Experian (one of the "Big Three" national credit reporting agencies). *Andrews v. TRW, Inc.*, 225 F.3d 1063 (9th Cir. 2000), rev'd on other grounds 534 U.S. 19, 122 S. Ct. 441 (2001). In *Andrews*, the

consumer claimed that TRW violated §1681b of the FCRA by sending her credit reports to creditors who were dealing with a person who had stolen her identity. The trial court ruled that Mr. Hendricks could not testify. The Ninth Circuit reversed, holding that Mr. Hendricks' opinions would be useful to the jury. 225 F.3d at 1067.

Finally, Mr. Hendricks' has acquired knowledge of the operations of all three of the national credit reporting agencies, Experian, Trans Union and Equifax. Not even the top management of each agency has this breadth of knowledge because the agencies compete with each other and do not share information on internal policies and procedures. This knowledge allows Mr. Hendricks to compare the procedures of each agency and learn how one does a better or worse job than the other in complying with the FCRA mandates to protect consumer privacy, assure accuracy and properly respond to consumer disputes.

Equifax cites *Thomas J. Kline, Inc. v. Lorillard, Inc.*, 878 F.2d 791 (4th Cir. 1989). In that case, the Fourth Circuit specifically noted that "it would be incorrect to conclude that Gordon's occupation as a professional expert alone requires exclusion of her testimony . . . ."  878 F.2d at 800. In *Kline*, the plaintiff offered an expert witness on the issue of whether the defendant's shift in credit practices was an unjustified credit discrimination and price discrimination under the Robinson-Patman Act. The expert had very limited training or experience compared to

Hendricks' more than 35 years of experience. The witness in *Kline* had obtained a business degree approximately seven years prior, and "Her work experience was limited largely to analyses of companies' financial health."  *Id.* at 799.

In this case, Hendricks' work in dozens of credit reporting cases has allowed him unique access to confidential policies and procedures. Moreover, his work as an expert witness in FCRA cases is not the sole basis for his qualification. He has also gained experience and expertise through his work with the Social Security Administration, the Federal Trade Commission, and both houses of Congress, as discussed in greater detail below. Numerous courts have admitted Mr. Hendricks to testify as an expert witness during the last decade, when Mr. Hendricks arguably had less experience.

Defendant also cites *Elcock v. Kmart Corp.*, 233 F.3d 734, 744 n. 5 (3d Cir. 2000). However, in that case, the exclusion of the plaintiff's expert was reversed and remanded to the district court for a Rule 104 hearing. Indeed, the Third Circuit noted that while the expert's qualifications "are not grounded in formal training, when taken together with his review of the literature in the field and his attendance at conferences, we must acknowledge that he has substantially more knowledge than an average lay person regarding employment opportunities for disabled individuals." 233 F.3d at 744 (internal quotations omitted).

Equifax also cites *Neal v. CSC Credit Servs., Inc.*, 2004 U.S. Dist. LEXIS 5235 (D. Neb. Mar. 30, 2004). In that case, the plaintiff attempted to offer as an expert an attorney that spent approximately 50% of his time litigating credit reporting cases. The court noted that "Being a litigator-advocate does qualify one as an expert." 2004 U.S. Dist. LEXIS 5235, at *3. However, that is not the basis for Hendricks' qualifications here. Hendricks is qualified for the many reasons set forth here, and his opportunity to analyze the confidential records in dozens of credit reporting cases is but one part of his qualifications.

E.   The Federal Government Has Recognized Mr. Hendricks' Expertise.

The Federal Trade Commission (FTC) hired Mr. Hendricks in an action it brought against Accusearch for violation of the FTC Act, involving the privacy of telephone records. *FTC v. Accusearch, Inc.*, Case No. 06-CV-105-D (D. Wy.). Accusearch sought to exclude Mr. Hendricks' testimony. The court denied the motion, finding that Mr. Hendricks was qualified as an expert on the confidentiality of telephone records and the harms caused by release of those records. Exhibit B, pages 4-5, Order Denying Defendant's Motion to Strike Plaintiff's Expert Witnesses and Exclude Testimony, February 5, 2007.

Mr. Hendricks has repeatedly testified before both houses of Congress concerning the credit reporting industry and consumer privacy. In 2003, Mr. Hendricks was one of only six witnesses the Senate Banking Committee invited to

testify on proposed amendments to the FCRA. That same year, Mr. Hendricks testified three more times before Congress and once for the FTC as it developed amendments to the FCRA. Some of Mr. Hendricks' recommendations were incorporated into the amendments to the FCRA enacted in 2003.

In 2005, Mr. Hendricks testified three more times before Congress on credit reports and related issues. In June 2006, he testified in a House Energy and Commerce Subcommittee hearing on "Privacy in the Commercial World II." In June 2007, he testified in the House Financial Services Committee hearing, "Credit Reports: Consumers' Ability to Dispute and Change Information." In July 2008, he testified on credit reporting and scoring issues.

F.  <u>Equifax and Experian Have Recognized Mr. Hendricks' Expertise.</u>

Finally, Equifax has recognized Mr. Hendricks as an expert on privacy issues. In its 1990 publication "The Equifax Report on Consumers in the Information Age," Equifax listed Mr. Hendricks as a privacy expert and expressed appreciation for his advice in that report. Def's Ex. A. Another of the "Big Three" credit reporting agencies, Experian, has also recognized Mr. Hendricks as an expert in the credit reporting field. In 2002, Experian asked him to serve on its Consumer Advisory Council, which addressed various credit reporting, marketing and privacy-related topics. Def's Ex. A.

## II.   MR. HENDRICKS IS QUALIFIED TO OPINE ON DAMAGES.

Mr. Hendricks can offer helpful testimony to the jury regarding the types of damages that are common to victims of mixed files and credit reporting errors, the foreseeability of such harms to Equifax, and that Equifax is on notice of such harms. Mr. Hendricks can inform the jury about the harm caused to consumers by inaccuracies in credit reports. This is particularly important in the event that (as plaintiff anticipates), Equifax attempts to present a cost-benefit "analysis" of its policies and procedures, which weighs error rates. The jury should consider not only the cost to Equifax to implement better policies and procedures, but also the cost to consumers for Equifax's failure to do so.

As noted above, Mr. Hendricks was specifically admitted in *FTC v. Accusearch, Inc.*, Case No. 06-CV-105-D, to testify regarding "the harms caused or likely to be caused by the selling of a consumer's personal phone records, any countervailing benefits, and the appropriate steps to avoid or mitigate potential harm." Ex. B, at p. 4-5.

Mr. Hendricks is not being proffered to provide medical testimony regarding the causation of Mr. Ma's damages. Rather, his testimony is that the types of harm that Mr. Ma suffered are consistently suffered by consumers in Mr. Ma's situation, and that these harms are foreseeable to Equifax.

## III.   MR. HENDRICKS' TESTIMONY IS RELIABLE.

Equifax complains that Mr. Hendricks' "methodology" is not reliable. But Equifax then quotes several sentences out of a 45-page report to complain about "broadly worded assertions." For example, many of the quoted sections that Equifax objects to are summaries of his ultimate opinions. Indeed, the section quoted by Equifax in Mr. Hendricks' report is captioned "Opinions – Summary." Def's Ex. A, p. 2.

For example, Equifax avers that "Mr. Hendricks states, without identifying any particular procedures, that the mixing in this case "meant that Equifax's procedures were not adequate for assuring maximum possible accuracy."" Def's Br. at p. 12. The actual quotation from Mr. Hendricks' summary is:

> Despite pledging more than 20 years ago to respect the importance of using full identifying information, Equifax mixed and merged the files of two consumers who had different SSNs, names, DoBs and addresses. This meant that Equifax's procedures were not adequate for assuring maximum possible accuracy. "Full Identifying Information" was defined by Equifax's Agreement of Assurances with the State Attorneys General as "full last and first name; middle initial; full street address; zip code; year of birth, any generational designation; and Social Security number."

That section is a single paragraph from the two-page summary of the entire 45-page report. The paragraph summarizes a description of how Equifax merged plaintiff with another consumer with different identifying information (pp. 3-5), and then juxtaposed Equifax's handling of plaintiff's case with the context of

actions by the FTC and state attorneys general (pp. 21-22).

Similarly, Equifax quotes part of the summary section from Mr. Hendricks' report: "He states 'that Equifax has failed to correct its systematic and procedural defects for reasonably and adequately understanding and responding to consumers' disputes,' but he does not identify any particular defects or explain how their application in this case caused problems for Plaintiff. (Id.)." Def's Br. at p. 12. This is again false. Mr. Hendricks writes at length about Equifax's procedures for processing a consumer's disputes (pp. 8-10), notice given to Equifax that its procedure of "parroting" false information does not comply with the FCRA, and its continued use of both procedures, i.e., partial match mixing and parroting (pp. 10-11).

Equifax's motion selectively quotes parts of the summary of conclusions, and then chides him for not expounding upon the basis for his conclusions (which he in fact does). Over the course of his 45-page report, Mr. Hendricks discusses in great detail the history of notice to Equifax of the same problems that happened to plaintiff. He explains the system for compiling credit files and investigating disputes, and then places plaintiff's experience within the context of decades of agency actions and civil lawsuits in order to demonstrate that Equifax has been on notice of the problems experienced by plaintiff, and continues to engage in the same conduct.

## IV.   MR. HENDRICKS' TESTIMONY WILL ASSIST THE JURY.

Equifax also attempts to characterize isolated sentences in Mr. Hendricks' report as "common sense observations," "speculation," or "legal conclusions." As noted above, most of these excerpts are from introductory or summation paragraphs pulling together many pages and paragraphs of analysis.

Mr. Hendricks does indeed make observations about the facts of the case in order to place them within the context of Equifax's history of notice of defects in its policies and procedures for complying with the FCRA. Similarly, Mr. Hendricks is in a unique position to evaluate Equifax's intent and motives based upon his decades of coverage of the credit reporting industry and confidential litigation histories. In addition, Mr. Hendricks has a unique vantage to understand and explain the ramifications of Equifax's action or inaction. Most consumers know their own history of credit disputes with Equifax, but will not have personal knowledge of how Equifax's conduct is negligent, reckless, or willful in the broader context. Mr. Hendricks possesses precisely this knowledge.

Equifax cites two cases for the proposition that expert testimony is not necessary to establish facts which are within the common knowledge of the jury. In *Evans v. Mathis Funeral Home, Inc*., 996 F.2d 266, 268 (11th Cir. 1993), the court found that expert testimony regarding "(1) the uneven risers and treads, (2) the brick patio and steps, (3) the height of the handrail, and (4) the dim light" as the

cause of the plaintiff's fall were "within the common knowledge of the jurors. 996 F.2d at 268. While the cause of a fall down a stairway is well within the common knowledge, it is extraordinarily unlikely that the lay jury will be versed in the inner workings of a credit reporting agency like Equifax, or with its procedures for obtaining credit information, compiling credit files, preparing consumer credit reports, and reinvestigating consumer disputes.

Similarly, in Taylor v. Ill. Cent. R.R. Co., 8 F.3d 584, 585-86 (7th Cir. 1993), the court found that "whether a pile of large rocks is harder to stand on than a pile of smaller rocks" could be understood by a lay jury without expert testimony. 8 F.3d at 585-86. Plaintiff submits that the reasonableness of Equifax's policies and procedures is not the same as "whether a pile of large rocks is harder to stand on than a pile of smaller rocks."

Equifax cites two cases holding that an expert ought not testify regarding a party's state of mind. S*iring v. Oregon State Bd. of Higher Educ. ex rel. E. Oregon Univ.*, 927 F. Supp. 2d 1069, 1077 (D. Or. 2013); *City of Grass Valley v. Newmont Mining Corp.*, No. 2:04-CV-00149GEBDAD, 2008 WL 544388, at *1 (E.D. Cal. Feb. 26, 2008). In this case, Mr. Hendricks can establish the long history of notice to Equifax vis-à-vis state and federal agency actions, prior decisions and jury verdicts, and the actions taken in this case to establish Equifax's motives and intent for taking particular actions.

Finally, Equifax argues that Mr. Hendricks cannot supplant the jury's decision making role by offering testimony regarding ultimate issues in the case. Under Fed. R. Evid. 704(a), "An opinion is not objectionable just because it embraces an ultimate issue." See also, *U.S. v. Two Eagle*, 318 F.3d 785, 792 (2003) ("[T]estimony is not defective merely because it utilized the words of the legal standard").

## V. HENDRICKS' TESTIMONY IS RELEVANT.

A. <u>Consent Decrees.</u>

Equifax seeks to exclude testimony that Equifax has been on notice of systemic problems with inaccurate credit reports, and specifically merging of consumer reports since the 1990s. Mr. Hendricks notes that as early as 1992, Equifax was on notice of the problem of mixed files and merged reports, by virtue of the state attorneys general actions and the FTC action. This context is relevant to plaintiff's claim that Equifax willfully disregarded his rights under the FCRA.

Mr. Hendricks has repeatedly been permitted to testify regarding this notice. Judge Illston cited this specific testimony in rejecting Equifax's motion for judgment as a matter of law in the *Drew* case: "Moreover, Mr. Hendricks testified that defendant long ago acknowledged these problems when it entered into agreements with the FTC and several states about reinvestigation of mixed files." Ex. C, p. 8.

B. Prior Cases.

For the same reason that Judge Illston permitted Mr. Hendricks to testify about the consent decrees Mr. Hendricks' testimony about judgments in prior cases is relevant in this case. Courts have repeatedly found that Equifax has failed to comply with its duties under the Fair Credit Reporting Act, placing Equifax on notice that its policies and procedures are inadequate to comply with the FCRA. Judge Mosman specifically allowed Mr. Hendricks to testify in the *Kirkpatrick* trial about numerous other cases in which Equifax had failed to respond or timely respond to a consumer's disputes. In *Miller*, Judge Brown allowed Mr. Hendricks to testify about prior verdicts in comparable cases.

Equifax also attempts to differentiate some, but not all of those cases, stating that they are not "mixed file" cases. That is not correct. The definition of a mixed file is a credit file that includes accounts or information that does not belong to the consumer. That is true of each of the cases cited in Mr. Hendricks' report.

In the *Drew* case, Judge Illston cited Mr. Hendricks' testimony in denying Equifax's motion for judgment as a matter of law. In that case, the jury returned a verdict finding Equifax willfully violated the FCRA. Ex. C, p. 4. Equifax moved for judgment as a matter of law on the "willful" claim under 15 U.S.C. § 1681n, which would effectively nullify the punitive damage award. Judge Illston rejected the motion, writing:

Plaintiff presented sufficient evidence for a reasonable jury to find that defendant ran an unjustifiably high risk of violating FCRA. Plaintiff's expert, Evan Hendricks, testified regarding the reasonableness of defendant's reinvestigation procedures. He testified that defendant's violation of FCRA was foreseeable. In particular, he testified that defendant had long had a policy of deferring to the reporting bank rather than performing independent investigations of consumer disputes. He testified that defendant was on notice regarding the possible problems with this method of reinvestigation, particularly where the consumer dispute stems from confusion over the identity of the person utilizing credit rather than confusion over the fact of or timing of payments. TR 621:5–621:15 (discussing defendant's earlier problems preventing mixed files—"when information on Consumer B was mixed into the file of Consumer A"—and problems reaching "timely resolution" through the "reinvestigation process"). Moreover, Mr. Hendricks testified that defendant long ago acknowledged these problems when it entered into agreements with the FTC and several states about reinvestigation of mixed files. * * * Mr. Hendricks concluded his direct examination by saying the following:

Everything in my experience, including other cases I've worked and the history I've talked about and what we see here, leads me to the inescapable opinion that Equifax is very satisfied with the way its system works. It's made a calculation that it's the right thing for it to do. And it has no intention of making the changes that I think are necessary to avoid the kind of problems that happened to Mr. Drew. Ex. C, p. 8.

## CONCLUSION

Mr. Hendricks has repeatedly been recognized as an expert qualified to testify on credit reporting by state and federal courts, retained by the Federal Trade Commission as an expert and invited by Congress to testify on the FCRA and consumer privacy. Equifax and Experian have recognized him as an expert in the

field. His testimony will be helpful to the jury in understanding the evidence presented and determining if Equifax has violated the FCRA, and placing Mr. Ma's case in the historical consequences of what Equifax knew about the problem of mixed credit reports.

Plaintiff respectfully requests that the court deny Equifax's motion to exclude the testimony of Evan Hendricks.

DATED this 8th day of September, 2017.

Respectfully submitted,

s/ Justin M. Baxter

_____

Justin M. Baxter, *admitted pro hac vice*
Baxter & Baxter, LLP
8835 SW Canyon Lane, Suite 130
Portland, OR 97225
Telephone: (503) 297-9031
Email: justin@baxterlaw.com

Shimshon Wexler, GA Bar No. 436163
315 W Ponce de Leon Ave Suite 250
Decatur, GA 30030
Telephone: (212) 760-2400
Facsimile: (917) 512-6132
Email: swexleresq@gmail.com

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned certifies that 14 point New Times Roman was used for this pleading and that it has been formatted in compliance with Local Rule 5.4.

Dated this 1st day of September 2017.


/s/ *Justin M. Baxter*
Justin M. Baxter

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I served the foregoing via the Court's electronic filing system, to the following persons and on the date set forth below:

Lewis P. Perling
Ted E. Roethke
Phyllis B. Sumner
Kendall W. Carter
Meryl W. Roper
KING & SPALDING, LLP
1180 Peachtree Street N.E.
Atlanta, Georgia 30309-3521

*Attorneys for Equifax Information Services LLC*

DATED this 8th day of September, 2017.

s/ Justin M. Baxter

_____

Justin M. Baxter, *admitted pro hac vice*
Baxter & Baxter, LLP
8835 SW Canyon Lane, Suite 130
Portland, OR 97225
Telephone: (503) 297-9031
Email: justin@baxterlaw.com

Shimshon Wexler, GA Bar No. 436163
315 W Ponce de Leon Ave Suite 250
Decatur, GA 30030
Telephone: (212) 760-2400
Facsimile: (917) 512-6132
Email: swexleresq@gmail.com