# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### Atlanta Division

FOLEY MA,                              )
                                      )

            Plaintiff,           )   Civil Action

                                        )

v.                                     )   No. 1:16-cv-01055-LMM-CMS

                                        )

EQUIFAX INFORMATION                    )
SERVICES LLC,                          )

                                        )

            Defendant.           )

---

**DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO EXCLUDE OR LIMIT THE TESTIMONY OF PLAINTIFF'S EXPERT, EVAN HENDRICKS**

---

Lewis P. Perling
King & Spalding LLP - Atlanta
1180 Peachtree Street NE
Atlanta, GA 30309
404-572-3079
Fax: 404-572-3100
Email: lperling@kslaw.com

*Attorneys for Equifax Information Services, LLC*

## **TABLE OF CONTENTS**

INTRODUCTION...................................................................................1

ARGUMENT ........................................................................................1

I.  **Mr. Hendricks' History As An Expert Witness Is Not Relevant Or Persuasive.** ..................................................................................1

II.  **Mr. Hendricks Is Not Qualified To Testify To The Matters He Proposes To Address As An Expert.**..........................................7

    A.  Mr. Hendricks Is Not Qualified To Testify Regarding Equifax's "Inner Workings." ...................................................7

    B.  Mr. Hendricks Is Not Qualified To Testify Regarding Plaintiff's Damages. ........................................................8

III.  **Mr. Hendricks Does Not Have A Reliable Methodology.** ...........10

IV.  **Mr. Hendricks Will Not Assist The Jury**.....................................13

V.  **Evidence Regarding 1990s Consent Decrees And Prior Cases Against Equifax Should Not Be Admitted**...................................16

CONCLUSION....................................................................................17

CERTIFICATE OF COMPLIANCE ..................................................18

CERTIFICATE OF SERVICE ...........................................................19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allison v. McGhan Medical Corp.*,
   184 F.3d 1300 (11th Cir. 1999) .................................................................13, 14

*Andrews v. TRW, Inc.*,
   225 F.3d 1063 (9th Cir. 2000), *rev'd on other grounds*, 534 U.S.
   19 (2001) ...........................................................................................................4, 5

*AstraZeneca LP v. Tap Pharm. Prods., Inc.*,
   444 F. Supp. 2d 278 (D. Del. 2006)....................................................................17

*Barabin v. AstenJohnson, Inc.*,
   700 F.3d 428 (9th Cir. 2012) ...........................................................................5, 6

*Estate of Barabin v. AstenJohnson, Inc.*,
   740 F.3d 457 (9th Cir. 2014) (*en banc*) ..............................................................5

*In re Baycol Products Litig.*,
   532 F. Supp. 2d 1029 (D. Minn. 2007)................................................................17

*Bright v. Ohio Nat. Life Assur. Corp.*,
   No. 11-CV-475-GKF-FHM, 2013 WL 121479 (N.D. Okla. Jan. 9,
   2013) ...................................................................................................................17

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*,
   509 U.S. 209 (1993)............................................................................................18

*Cheek v. Halliburton Energy Servs., Inc.*,
   No. CIV-13-116-M, 2015 WL 11236846 (W.D. Okla. June 16,
   2015) ...................................................................................................................18

*In re Citric Acid Litigation*,
   191 F.3d 1090 (9th Cir. 1999) ..........................................................................18

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 592 (1993).................................................................................5, 13, 14

*Duncan v. JPMorgan Chase Bank, N.A.*,
No. SA-14-CA-00912-FB, 2016 WL 4419472 (W.D. Tex. May 24, 2016) ................................................................................................8

*Elcock v. Kmart Corp.*,
233 F.3d 734 (3d Cir. 2000) ................................................................6

*F.T.C. v. Accusearch, Inc.*,
No. CIV.06-CV-105-D, 2007 WL 4616274 (D. Wyo. Feb. 5, 2007) .........12, 13

*Ferrara & DiMercurio v. St. Paul Mercury*,
240 F.3d 1 (1st Cir. 2001)....................................................................6

*Fox v. Pittsburg State Univ.*,
No. 14-CV-2606-JAR-KGG, 2016 WL 4919463 (D. Kan. Sept. 15, 2016) ................................................................................................12

*General Electric Co. v. Joiner*,
522 U.S. 136 (1997).............................................................................14

*Hardin v. Ski Venture, Inc.*,
50 F.3d 1291 (4th Cir. 1995) ..............................................................6

*Heer v. Costco Wholesale Corp.*,
589 Fed. App'x 854 (10th Cir. 2014) ................................................14

*Hibiscus Associates Ltd. v. Board of Trustees of Policemen and Firemen Retirement Sys. Of the City of Detroit*,
50 F.3d 908 (11th Cir. 1995) ..............................................................10

*Highland Capital Mgmt., L.P. v. Schneider*,
379 F. Supp. 2d 461 (S.D.N.Y. 2005) ...........................................18, 19

*Johnson v. Wyeth LLC*,
No. CV 10-02690-PHX-FJM, 2012 WL 1204081 (D. Ariz. Apr. 11, 2012) ..............................................................................................17

*King v. Cessna Aircraft Co.*,
03-20482-CIV, 2010 WL 1980861 (S.D. Fla. May 18, 2010) ............10

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999) (Scalia, J., concurring) ....................................6

iv

*McDonough v. JPMorgan Chase Bank, N.A.*,
No. 4:15-CV-00617-JCH, 2016 WL 4944099 (E.D. Mo. Sept. 16,
2016) ...........................................................................................................7

*Mukhtar v. Cal. State Univ., Hayward*,
299 F.3d 1053 (9th Cir. 2002) ...............................................................6

*Neal v. Ford Motor Credit Co., LLC*,
No. 6:15-CV-03474-MDH, 2016 WL 7971447 (W.D. Mo. Oct. 18,
2016) ...........................................................................................................8

*In re Rezulin Products Liab. Litig.*,
309 F. Supp. 2d 531 (S.D.N.Y. 2004) ............................................10, 18

*Selectica, Inc. v. Novatus, Inc.*,
2015 WL 12843840 (M.D. Fla. Sept. 30, 2015) (Byron, J.) ...............14

*Siring v. Oregon State Bd. of Higher Educ. ex rel. E. Oregon Univ.*,
927 F. Supp. 2d 1069 (D. Or. 2013) .....................................................17

*Taylor v. Equifax Information Services, LLC*,
CIV-16-39-D (W.D. Okla. July 19, 2017)........................................8, 9

*Tillman v. C.R. Bard, Inc.*,
96 F. Supp. 3d 1307, 1325 (M.D. Fla. 2015)................................18, 19

*Toler v. Experian Info. Solutions, Inc.*,
No. 6:12-cv-06032-RTD (W.D. Ark. Nov. 17, 2014).........................7

*In re Trasylol Products Liab. Litig.*,
709 F. Supp. 2d 1323 (S.D. Fla. 2010) .............................................10

*U.S. v. Hermanek*,
289 F.3d 1076 (9th Cir. 2002) ............................................................15

*U.S. v. Sayre*,
434 F. App'x 622 (9th Cir. 2011) .......................................................15

*Valentine v. Equifax Information Services*,
Case No. CV-05-801-JO, ECF No. 68 (minutes) (D. Ore., Oct. 4,
2007) ...........................................................................................................7

*Valenzuela v. Equifax Info. Servs. LLC*,
    No. CV-13-02259-PHX-DLR, 2015 WL 6811585 (D. Ariz. Nov.
    6, 2015) ...................................................................................................7

*In re Xerox Corp. Securities Litig.*,
    746 F. Supp. 2d 402 (D. Conn. 2010).................................................17

*Yourke v. Experian Info. Sols., Inc.*,
    No. C 06-2370 CW, 2007 WL 1795705 (N.D. Cal. June 20, 2007) ...................8

*Zabriskie v. Fed. Nat'l Mortg. Ass'n*,
    No. CV-13-02260-PHX-SRB, 2016 WL 3653512 (D. Ariz. Apr.
    22, 2016) ..................................................................................................7

**Statutes**

FCRA ...........................................................................................7, 12, 16

**Other Authorities**

Fed. R. Evid. 702 ...............................................................................14, 15

Fed. R. Evid. 703 ....................................................................................19

Rule 702: (1) ..........................................................................................13

**INTRODUCTION**

Evan Hendricks, Plaintiff's proposed expert, is a consumer advocate who has no experience working in the credit reporting industry or in any related field. He has developed opinions and views, colored by that advocacy, that do not meet the criteria for expert testimony. Plaintiff, who has the burden of proving admissibility, has not demonstrated that Mr. Hendricks' opinions are the product of *any* methodology—much less a *reliable* methodology—or that they will assist the trier of fact. An expert is not needed to testify on matters of common sense or general understanding, including discussing that an "adequate reinvestigation" requires identifying what steps to take and implementing them, or explaining that, in his view, Equifax should have devoted more attention to Plaintiff's disputes. Nor does the jury need to hear Mr. Hendricks' speculation regarding Equifax's state of mind.

**ARGUMENT**

**I.    MR. HENDRICKS' HISTORY AS AN EXPERT WITNESS IS NOT RELEVANT OR PERSUASIVE.**

Plaintiff devotes a large portion of his brief to discussing other cases and proceedings in which Mr. Hendricks was allowed to testify.[1] Mr. Hendricks' past

---

[1] Plaintiff incorrectly asserts that the Ninth Circuit found Mr. Hendricks to be a qualified expert in *Andrews v. TRW, Inc.*, 225 F.3d 1063, 1067 (9th Cir. 2000), *rev'd on other grounds*, 534 U.S. 19 (2001)). (Doc. 42 at 9). Plaintiff grossly exaggerates a statement made in *Andrews* faulting the lower court for failing to

experience however, does not qualify him to be an expert in this case and is not an appropriate consideration for a court exercising its gatekeeping function. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 592, 597 (1993).

This rule is made clear in *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457 (9th Cir. 2014) (*en banc*). In that case, the Ninth Circuit vacated a jury verdict in favor of the plaintiff and remanded for a new trial after the district court neglected to perform its gatekeeping role. *See Estate of Barabin*, 740 F.3d at 464. The district court initially barred an expert from testifying because of his "dubious credentials" and lack of relevant expertise. *Id*. at 461. After receiving information regarding the experts use in other cases, the district court reversed itself and allowed his testimony, stating only that "plaintiffs did a much better job of presenting to me the full factual basis behind [the expert's] testifying and his testimony in other cases." *Id*. at 464; *see also Barabin v. AstenJohnson, Inc.*, 700 F.3d 428, 431 (9th Cir. 2012) (panel opinion).

The holding in *Estate of Barabin* demonstrates the low value placed on an expert's past history as an expert for purposes of the district court's gatekeeping

---

consider the reports of two expert witnesses, including Mr. Hendricks, before granting summary judgment. The Ninth Circuit merely stated that "the jury would be helped by expert opinion on the prevalence of identity theft, as the district court would have been helped if it had given consideration to the Plaintiff's witnesses on this point before giving summary judgment." *Andrews*, 225 F.3d at 1067. This hardly qualifies as an endorsement of Mr. Hendricks as an expert in any case, let alone as an expert in all cases and for all purposes related to consumer credit reporting. Identity theft is not an issue here.

function. Other courts have reached similar conclusions. *See*, *e.g.*, *Ferrara &
DiMercurio v. St. Paul Mercury*, 240 F.3d 1, 8 n.4 (1st Cir. 2001) ("the views of
prior judges about [the proffered expert witness] would be largely irrelevant here";
holding that expert's prior *dis*qualification was not relevant); *Elcock v. Kmart
Corp.*, 233 F.3d 734, 744 n.5 (3d Cir. 2000) ("[T]he mere fact that Copemann was
previously admitted as an expert witness qualified to give testimony on vocational
rehabilitation is irrelevant to the determination whether he is qualified to give such
testimony in this case."); *Hardin v. Ski Venture, Inc*., 50 F.3d 1291, 1296 (4th Cir.
1995) (testifying as an expert in other ski-accident cases did not qualify plaintiff's
expert).

"The potentially significant influence of expert testimony"—which "is often
the difference between winning and losing a case"—"underscores the importance
of assiduous 'gatekeeping' by trial judges." *Barabin*, 700 F.3d at 432. Although a
trial court has "discretion in choosing the manner of testing expert reliability," this
does not include the "discretion to abandon the gatekeeping function," or "to
perform the function inadequately." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137,
158-59 (1999) (Scalia, J., concurring). The court's role "is vital to ensure accurate
and unbiased decision-making by the trier of fact." *Mukhtar v. Cal. State Univ.,
Hayward*, 299 F.3d 1053, 1063 (9th Cir. 2002) (citation omitted). That role cannot
be fulfilled by relying on Mr. Hendricks' past qualification as an expert.

Moreover, although Plaintiff provides a list of cases in which Mr. Hendricks was permitted to testify, Plaintiff did not mention that the courts in many of those cases limited his testimony. *See*, *e.g.*, *Zabriskie v. Fed. Nat'l Mortg. Ass'n*, No. CV-13-02260-PHX-SRB, 2016 WL 3653512, at *2 (D. Ariz. Apr. 22, 2016) (excluding testimony by Mr. Hendricks as to whether procedures should be considered "unreasonable" under the FCRA, because this is an ultimate issue that will be decided by the jury); *Valentine v. Equifax Information Services*, Case No. CV-05-801-JO, ECF No. 68 (minutes) (D. Ore., Oct. 4, 2007) ("Evidence of custom and practice before 1996 is excluded."); *Toler v. Experian Info. Solutions, Inc.*, No. 6:12-cv-06032-RTD (W.D. Ark. Nov. 17, 2014) (granting motion to exclude Mr. Hendricks's testimony regarding damages and many other matters).

Nor does Plaintiff acknowledge several other FCRA cases "just since 2005" in which his testimony was limited. *See*, *e.g.*, *Valenzuela v. Equifax Info. Servs. LLC*, No. CV-13-02259-PHX-DLR, 2015 WL 6811585, at *3 (D. Ariz. Nov. 6, 2015); *McDonough v. JPMorgan Chase Bank, N.A.*, No. 4:15-CV-00617-JCH, 2016 WL 4944099, at *3 (E.D. Mo. Sept. 16, 2016) ("[Hendricks] will not be permitted to render an opinion as to whether [defendant's] conduct has caused [plaintiff] emotional distress, and he will be precluded from providing any opinions regarding the types of damages that are common to victims who have suffered emotional distress under comparable circumstances as [plaintiff].");

*Duncan v. JPMorgan Chase Bank, N.A.*, No. SA-14-CA-00912-FB, 2016 WL 4419472, at *13 (W.D. Tex. May 24, 2016), report and recommendation adopted, No. SA-14-CA-912-FB, 2016 WL 4411551 (W.D. Tex. June 17, 2016) (disregarding damages figure offered by Mr. Hendricks because he "fails to explain, in any way, his reasoning for arriving at the figure"); *Yourke v. Experian Info. Sols., Inc.*, No. C 06-2370 CW, 2007 WL 1795705, at *6 (N.D. Cal. June 20, 2007) (granting motion in limine to exclude testimony of plaintiff's expert witness Evan Hendricks for purposes of motion for summary judgment); *Neal v. Ford Motor Credit Co., LLC*, No. 6:15-CV-03474-MDH, 2016 WL 7971447, at *2–3 (W.D. Mo. Oct. 18, 2016) (granting motion in limine to exclude Hendricks from testifying regarding several opinions: (1) damages sustained by Plaintiff, whether economic or non-economic; (2) the intentions or state of mind of the defendant; (3) purported notice to the defendant obtained through legal sources, including case law as interpreted by Hendricks; (4) opinions on legal matters; and (5) "Context – History of Significant Inaccuracy Problems"); *Taylor v. Equifax Information Services, LLC*, CIV-16-39-D, (W.D. Okla. July 19, 2017) (*see* Ex. D to Equifax's Motion, Doc. 41-5) (excluding Hendricks from testifying regarding damages sustained by Plaintiff, "[i]nsofar as Hendricks purports to provide substantive expert testimony on the categories of damages requested in Plaintiff's Complaint (actual, punitive, and statutory damages), such testimony will not be allowed by

this witness. Hendricks does not hold himself out as a damages expert and nothing in the materials before the Court support such a conclusion. Accordingly, Defendant's Motion on this issue is granted in part", *id.* at 8-9; and inviting additional motions in limine on specific topics, *id.* at 11-12).

Further, Plaintiff has not demonstrated that many of the cases he cites involved comparable circumstances. Mr. Hendricks's past work as a *privacy* expert, for example, has no application here.[2]

Finally, as Judge Brown recognized in *Miller v. Equifax*, Mr. Hendricks is not a typical expert because his specialized knowledge was acquired "through the focus of an advocate" and his opinions were "colored by that advocacy." (Doc. 42-1 at 61:20-25). Indeed, she concluded that, unlike a typical expert, "Mr. Hendricks is not neutral." (*Id.* at 62:2). Although Judge Brown believed that Mr. Hendricks' "lack of neutrality" should go to the weight of his testimony, rather than its admissibility (*see id.* at 62:1-6), this Court should reach a different conclusion. Other courts have recognized that opinions colored by advocacy tend to be unreliable, and that a witness whose "major role" is that of an advocate should not be allowed to testify. "Expert testimony is properly excluded when it is not needed to clarify facts and issues of common understanding which jurors are able to

---

[2] Equifax denies that it ever used Mr. Hendricks as a privacy expert or for any other purpose. The 1990 report mentioned by Plaintiff (Doc. 37 at 8) was prepared by a consultant, not by Equifax.

comprehend for themselves." *Hibiscus Associates Ltd. v. Board of Trustees of Policemen and Firemen Retirement Sys. Of the City of Detroit*, 50 F.3d 908, 917-18 (11th Cir. 1995) (no abuse of discretion where court excluded expert testimony intended to elucidate facts that could be presented by other witnesses); *see also In re Trasylol Products Liab. Litig*., 709 F. Supp. 2d 1323, 1347 (S.D. Fla. 2010). "[T]rial courts must be wary lest the expert become nothing more than an advocate of policy before the jury." *King v. Cessna Aircraft Co*., 03-20482-CIV, 2010 WL 1980861, *5 (S.D. Fla. May 18, 2010) (quoting *In re Air Crash Disaster at New Orleans, La.*, 795 F.2d 1230, 1233 (5th Cir. 1982)); *see also In re Rezulin Products Liab. Litig*., 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004).

## II. MR. HENDRICKS IS NOT QUALIFIED TO TESTIFY TO THE MATTERS HE PROPOSES TO ADDRESS AS AN EXPERT.

Mr. Hendricks is not qualified to address two key areas in which Plaintiff offers his testimony: Equifax's "inner workings" and Plaintiff's damages.

### A. Mr. Hendricks Is Not Qualified To Testify Regarding Equifax's "Inner Workings."

Plaintiff states that Mr. Hendricks's "testimony is necessary to help the jury to understand the inner workings of the credit reporting industry, which is hidden and kept confidential from the public." (Doc. 42 at 1). Mr. Hendricks, however, has no experience with "the inner workings of the credit reporting industry." He has never worked for a consumer reporting agency, creditor, or regulatory agency

charged with oversight of the industry. He has no expertise in computer programming and no knowledge of how Equifax's computerized database is built and maintained. Indeed, as might be expected given Mr. Hendricks' lack of experience, his report contains very little, if any, information regarding Equifax's "inner workings" other than speculation and conjecture. He does not discuss Equifax's written policies and procedures, and Plaintiff cites no examples of opinions based on Equifax's "inner workings."

Furthermore, none of the relevant evidence in this case is hidden from Plaintiff or the jury. Plaintiff deposed two Equifax representatives—Alicia Fluellen and Margaret Leslie—both of whom have extensive knowledge regarding Equifax's policies and procedures related to mixed consumer files and reinvestigations. Plaintiff also received over 1200 pages of policy documents and manuals from Equifax through discovery, not a single page of which is mentioned in Mr. Hendricks's report. Given the importance Plaintiff places on Mr. Hendricks's access to Equifax's documents and depositions from prior cases, it is striking that he does not discuss any of this material in his report.

**B.    Mr. Hendricks Is Not Qualified To Testify Regarding Plaintiff's Damages.**

Plaintiff does not directly address Equifax's argument regarding Mr. Hendricks' lack of qualification to be a damages expert. He only asserts that Mr. Hendricks should be allowed to "inform the jury about the harm caused to

consumers by inaccuracies in credit reports" to counter Equifax's anticipated presentation of "a cost-benefit 'analysis' of its policies and procedures." (Doc. 42 at 14). Putting aside Plaintiff's unsupported speculation regarding Equifax's theory of the case, the argument is beside the point: Plaintiff does not adequately address the fundamental problem of Mr. Hendricks' lack of qualification, the fact that no specialized knowledge is required to assess Plaintiff's alleged damages, or the impermissible imprimatur placed on Plaintiff's damages testimony merely because it is on Mr. Hendricks' FCRA damages menu. Generalized testimony intended to suggest possible causation of a particular plaintiff's damages is prohibited. *See, e.g., Fox v. Pittsburg State Univ.*, No. 14-CV-2606-JAR-KGG, 2016 WL 4919463, at *3 (D. Kan. Sept. 15, 2016).

Finally, Plaintiff states that the Federal Trade Commission ("FTC") "hired Mr. Hendricks" as an expert. (Doc. 42 at 12). In that case, Mr. Hendricks was used as a *privacy* expert, not as an expert in consumer reporting. *F.T.C. v. Accusearch, Inc.*, No. CIV.06-CV-105-D, 2007 WL 4616274, at *1-2 (D. Wyo. Feb. 5, 2007). Moreover, the FTC was seeking an injunction against Accusearch; thus, generalized testimony concerning potential damages to consumers may have been appropriate in that case, but not here where damages are at issue. *Id.* Moreover, the *Accusearch* opinion contains very little analysis and does not describe the proposed

testimony in sufficient detail to determine what similarities, if any, the testimony there has to this case. *Id.*

Mr. Hendricks' generalized opinion about the potential or likely harm caused to consumers by inaccuracies in credit reports is simply regurgitating Plaintiff's likely testimony concerning his damages, but under the guise of expert opinion. There is no "methodology" involved in this purported opinion, and it certainly would not be helpful to the jury. It requires no special expertise. Rather, this "opinion" improperly invades the province of the jury. Mr. Hendricks is, in effect, acting as an advocate for Plaintiff, imbuing Plaintiff's factual statements with the imprimatur of "expert opinion." He proposes to do what the jury is quite capable of doing on its own – listen to Plaintiff's testimony and reach conclusions as to his credibility.

## III.   MR. HENDRICKS DOES NOT HAVE A RELIABLE METHODOLOGY.

"The *Daubert* Court listed four noninclusive factors courts should consider in determining reliability under Rule 702: (1) whether the theory or technique can be tested; (2) whether it has been subjected to peer review; (3) whether the technique has a high known or potential rate of error; and (4) whether the theory has attained general acceptance within the scientific community." *Allison v. McGhan Medical Corp.,* 184 F.3d 1300, 1312 (11th Cir. 1999) (citing *Daubert,* 509 U.S. at 593–94).

The Eleventh Circuit has applied additional factors, including whether the expertise was developed for litigation, "reliance on anecdotal evidence (as in case reports), temporal proximity, and improper extrapolation." *Allison v. McGhan Medical Corp.,* 184 F.3d 1300, 1312 (11th Cir. 1999); *see also Selectica, Inc. v. Novatus, Inc.*, 2015 WL 12843840 at *3 (M.D. Fla. Sept. 30, 2015) (Byron, J.); Fed. R. Evid. 702, Advisory Committee's Note to 2000 Amendments.

 "Exactly *how* reliability is evaluated may vary from case to case, but what remains constant is the requirement that the trial judge evaluate the reliability of the testimony before allowing its admission at trial." *Frazier*, 387 F. 3d 1244, 1262 (11th Cir. 2004) (emphasis original) (citing Fed. R. Evid. 702 advisory committee's note (2000 amends.)); *see also*, *Selectica, Inc.*, 2015 WL 12843840 at *6 (excluding expert testimony as unreliable).

Self-proclaimed knowledge and experience are not enough: as the Supreme Court explained in *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997), "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." *See also Heer v. Costco Wholesale Corp.*, 589 Fed. App'x 854, 861 (10th Cir. 2014). "[T]he witness must explain how [his] experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702

advisory committee's note to 2000 amendments. Mr. Hendricks' report does not provide any such explanation.

Knowledge and experience is not a methodology. *See U.S. v. Sayre*, 434 F. App'x 622, 624 (9th Cir. 2011) (affirming exclusion of expert testimony where witness could not identify any empirical data or methodology on which he had relied other than his "knowledge and experience"); *U.S. v. Hermanek*, 289 F.3d 1076, 1093 (9th Cir. 2002), 289 F.3d at 1094 ("The factors [the expert] identified—his knowledge and prior investigation of defendants and the 'evidence seized' in the case—were too vague and generalized to satisfy the requirements of Rule 702."). While this inquiry is meant to be a "flexible" one, the court must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Dodge*, 328 F.3d at 1222-23 (citing *Kumho Tire*, 526 U.S. at 152).

Plaintiff argues that Mr. Hendricks' methodology is demonstrated through his "45-page report,"[3] in which he discusses "in great detail the history of notice to Equifax of the same problems that happened to plaintiff." (Doc. 42 at 16). This

---

[3] Fifteen of the pages in Mr. Hendricks' "45-page report" contain descriptions of Mr. Hendricks' alleged qualifications and past experiences. Four pages are limited to general information about the nature and purpose of credit scores and credit reports. *See* Doc. 41-1.

information, Plaintiff asserts, is relevant to the issue of whether Equifax willfully violated the FCRA. A factual or historical recitation is not a methodology. Plaintiff does not explain why or how this history provided Equifax with notice of the alleged deficiencies in its *current* policies and procedures. A reliable method for evaluating Equifax's handling of mixed files would require, at the very least, analysis of error rates over time and a discussion of available alternative processes for building consumer credit files.

Because Mr. Hendricks' report provides no explanation at all for how he bridges that gap between historical facts and the opinions he offers, leaving the Court, Equifax, and the jury no basis at all on which to evaluate his methodology, he should not be allowed to testify.

## IV.  MR. HENDRICKS WILL NOT ASSIST THE JURY.

Plaintiff offers no meaningful response to Equifax's arguments regarding Mr. Hendricks' improper narration of the facts, the fact that his opinions do not require specialized knowledge and contain legal opinions, and speculation regarding Equifax's state of mind.

He asserts that "Mr. Hendricks is in a unique position to evaluate Equifax's intent and motives" (Doc. 42 at 17), but that is not appropriate expert testimony. Numerous courts have held that opinions regarding motive, intent, and state of mind are inadmissible because they have no basis in any relevant body of

knowledge or expertise and lie outside the proper bounds of expert testimony. *See*, *e.g.*, *Bright v. Ohio Nat. Life Assur. Corp.*, No. 11-CV-475-GKF-FHM, 2013 WL 121479, at *4 (N.D. Okla. Jan. 9, 2013); *Siring v. Oregon State Bd. of Higher Educ. ex rel. E. Oregon Univ.*, 927 F. Supp. 2d 1069, 1077-78 (D. Or. 2013) (citing numerous cases); *Johnson v. Wyeth LLC*, No. CV 10-02690-PHX-FJM, 2012 WL 1204081, *3 (D. Ariz. Apr. 11, 2012) (precluding experts from offering "opinions concerning defendants' motive, intent, knowledge, or other state of mind"); *In re Xerox Corp. Securities Litig.*, 746 F. Supp. 2d 402, 415 (D. Conn. 2010); *In re Baycol Products Litig.*, 532 F. Supp. 2d 1029, 1053 (D. Minn. 2007); *AstraZeneca LP v. Tap Pharm. Prods., Inc.*, 444 F. Supp. 2d 278, 293 (D. Del. 2006). "The jury is sufficiently capable of drawing its own inferences regarding intent, motive, or state of mind from the evidence, and permitting expert testimony on this subject would be merely substituting the expert's judgment for the jury's and would not be helpful to the jury." *Siring*, 927 F. Supp. 2d at 1077.[4]

---

[4] Plaintiff's Opposition clearly suggests that Mr. Hendricks intends to testify about what he perceives to be Equifax's motive, intent, and state of mind:

> Everything in my experience, including other cases I've worked and the history I've talked about and what we see here, leads me to the inescapable opinion that Equifax is very satisfied with the way its system works. It's made a calculation that it's the right thing for it to do. And it has no intention of making the changes that I think are necessary to avoid the kind of problems that happened to Mr. Drew.

Plaintiff further contends that Mr. Hendricks "has a unique vantage to understand and explain the legal ramifications of Equifax's action or inaction." (Doc. 42 at 16). It is black letter law, however, that testifying experts may not offer legal conclusions. *See, e.g.*, *Tillman v. C.R. Bard, Inc.*, 96 F. Supp. 3d 1307, 1325 (M.D. Fla. 2015) (citing *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Florida*, 402 F.3d 1092, 1112 n. 8 (11th Cir. 2005)); *Highland Capital Management, L.P.*, 379 F. Supp. 2d 461, 471 (S.D.N.Y. 2005); *In re Rezulin*, 309 F. Supp. 2d. 531, 541 (S.D.N.Y. 2004) ("[Expert] may not…communicate a legal standard-explicit or implicit-to the jury. This principle requires the exclusion of testimony that states a legal conclusion…") (internal quotation marks omitted).

Finally, Plaintiff asserts that Mr. Hendricks' "observations about the facts" merely "place them within the context of Equifax's history of notice of the defects in its policies and procedures." (Doc. 42 at 17). An expert report, however, may not "be used to prove the existence of facts set forth therein." *In re Citric Acid Litigation*, 191 F.3d 1090, 1102 (9th Cir. 1999); *see also see also Cheek v. Halliburton Energy Servs., Inc.*, No. CIV-13-116-M, 2015 WL 11236846, at *5 (W.D. Okla. June 16, 2015) (holding that expert should not be allowed to give the imprimatur of expert opinion to plaintiffs' statements of fact); *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993) ("Expert testimony

(Opposition, Doc. 42 at 21). As set forth above, such testimony is impermissible.

is useful as a guide to interpreting market facts, but it is not a substitute for them."). "While an expert must of course rely on facts or data in formulating an expert opinion, *see* Fed. R. Evid. 703, an expert cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence." *Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 469 (S.D.N.Y. 2005).

## V.   EVIDENCE REGARDING 1990s CONSENT DECREES AND PRIOR CASES AGAINST EQUIFAX SHOULD NOT BE ADMITTED.

In response to Equifax's arguments regarding the consent decrees Equifax entered into in the early 1990s and prior cases against Equifax, Plaintiff merely asserts that context is relevant to his claim that Equifax willfully violated the law and relies on prior cases in which Mr. Hendricks was allowed to give testimony on these matters. (*See* Doc. 42 at 19-20). The decisions made in other cases are neither relevant not persuasive. In addition, these documents and statements – offered under the guise of "opinions" – are actually statements of "facts."

Experts may express opinions "only insofar as the witness aids the jury in the interpretation of technical facts or to assist in understanding the material in evidence. Courts do not permit experts to testify to "simple inferences drawn from uncomplicated facts that serve only to buttress plaintiff's theory of the case." *Tillman v. C.R. Bard, Inc.*, 96 F. Supp. 3d 1307, 1330 (M.D. Fla. 2015) (quoting *In re Rezulin*, 309 F. Supp. 2d. 531, 551 (S.D.N.Y. 2004)). The jury is the appropriate

finder of fact and does not need Mr. Hendricks providing facts, restating facts as "opinions," or opining as to the credibility of Plaintiff. For the reasons stated here and in Equifax's opening brief, these "opinions" should not be admitted.

## <u>CONCLUSION</u>

For the reasons discussed above and in Equifax's opening brief, Equifax's Motion to Exclude Or Limit the Testimony of Plaintiff's Expert, Evan Hendricks should be granted.

DATED: September 22, 2017.

Respectfully submitted,

EQUIFAX INFORMATION SERVICES LLC

/s/ *Lewis P. Perling*
Lewis P. Perling
Georgia Bar No. 572379
KING & SPALDING LLP
1180 Peachtree Street N.E.
Atlanta, GA 30309-3521
Tel: 404-572-3079
Fax: 404-572-3100
Email: lperling@kslaw.com
*Attorneys for Equifax Information Services, LLC*

17

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned certifies that this document was prepared with Times New Roman 14 point, and Times New Roman 14 point was approved by the court in LR 5.1C.

DATED: September 22, 2017.

*/s/ Lewis P. Perling*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day served a true and correct copy of the

foregoing via email to the following attorneys of record:

Justin Michael Baxter
Baxter & Baxter, LLP
8835 SW Canyon Lane, Suite 130
503-297-9031
Portland, OR 97225
Email: justin@baxterlaw.com

Shimshon E. Wexler
Shimshon Wexler, Attorney at Law
315 West Ponce De Leon, Suite 250
Atlanta, GA 30030
212-760-2400
Email: swexleresq@gmail.com

***Attorneys for Plaintiff***

DATED: September 22, 2017.


*/s/ Lewis P. Perling*