# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| FOLEY MA, | ) | |
| | ) | |
| **Plaintiff,** | ) | Civil Action |
| | ) | |
| v. | ) | No. 1:16-cv-01055-LMM-CMS |
| | ) | |
| EQUIFAX INFORMATION | ) | |
| SERVICES LLC, | ) | |
| | ) | |
| **Defendant.** | ) | |

---

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS IN LIMINE

---

Plaintiff Foley Ma hereby submits this response in opposition to defendant Equifax Information Services, LLC's motions in limine.

## I. MOTION IN LIMINE NO. 1: MOTION TO EXCLUDE EVIDENCE AND TESTIMONY RELATED TO PAST CASES AGAINST EQUIFAX

Defendant moves to exclude evidence of jury verdicts finding that Equifax failed to comply with the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 et seq. The relevant jury verdicts are as follows:

- *Kirkpatrick v. Equifax*, D. Or. Case No. CV 02-1197-MO (jury returned verdict in 2005 finding that Equifax negligently failed to comply with FCRA)

- *Sloane v. Equifax*, E.D. Va. Case No. CIV 1:05 cv 1272 (jury returned verdict in 2006 finding that Equifax negligently failed to comply with FCRA)

- *Robinson v. Equifax*, E.D. Va. Case No. 06-CV-1336 (jury returned verdict in 2007 finding that Equifax negligently failed to comply with FCRA)

- *Valentine v. Equifax*, D. Or. Case No. 05-CV-0801-JO (jury returned verdict in 2007 finding that Equifax negligently failed to comply with FCRA)

- *Williams v. Equifax*, Orange Co. Cir. Ct. (Fla.) Case No. 48-2003-CA-9035-0 (jury returned verdict in 2007 finding that Equifax willfully and negligently failed to comply with FCRA)

- *Drew v. Equifax*, N.D. Cal. Case No. CV 07-00726-SI (jury returned verdict finding in 2010 that Equifax willfully and negligently failed to comply with FCRA)

- *Miller v. Equifax*, D. Or. Case No. 3:11-cv-01231-BR (jury returned verdict in 2013 finding that Equifax willfully and negligently failed to comply with FCRA)

A. Negligence and Recklessness.

As Equifax notes in its brief, plaintiff must demonstrate that defendant's violations were either negligent or willful. Def. Br., p. 2; 15 U.S.C. § 1681o(a), 1681n(a). The U.S. Supreme Court has held that "reckless disregard of a requirement of FCRA would qualify as a willful violation within the meaning of § 1681n(a)." *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 127 S.Ct. 2201 (2007). In this case, a determination that Equifax had failed to comply with the requirements of the FCRA is probative to whether its action in the same regard was negligent or reckless.

2

The Eleventh Circuit has held: "Evidence of similar occurrences may be offered to show a defendant's notice of a particular defect or danger … [or] the defendant's ability to correct a known defect." *Hessen for Use & Benefit of Allstate Ins. Co. v. Jaguar Cars, Inc.*, 915 F.2d 641, 650 (11th Cir. 1990).

Equifax selectively cites part of FRE 404(b) for the proposition that "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Equifax fails to cite the rest of that rule, which provides:

> (2) Permitted Uses; Notice in a Criminal Case. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. On request by a defendant in a criminal case, the prosecutor must:
>
> (A) provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and
>
> (B) do so before trial — or during trial if the court, for good cause, excuses lack of pretrial notice. FRE 404(b)(2).

Plaintiff has met the requirements of FRE 404 by including the *Williams* and *Miller* cases in his complaint, and by disclosing the other cases in his expert witness disclosure.

Equifax cites Judge Vineyard's ruling in *Smith v. E-backgroundchecks.com, Inc.*, 1:13-cv-02658-RGV, 2015 WL 11233453, *1-2 (N.D. Ga. Jun. 4, 2015) for the proposition that "Evidence of prior lawsuits is generally considered to be

inadmissible hearsay." Def's Br., p. 3. However, Judge Vineyard specifically noted that "in no other lawsuit has a court or jury ever found that [the defendant] violated the FCRA." 2015 WL 11233453, at *1. The cases cited in *Smith* refer to complaints, allegations, and pending litigation. *Id.* By contrast, the seven different juries cited above have returned verdicts that Equifax failed to comply with the FCRA. In each of these cases, the jury found that Equifax reported and failed to remove delete false information.

Equifax also attempts to distinguish some of the verdicts, which arose out of identity theft. That is a distinction without a difference. First, the *Williams* and *Miller* cases specifically dealt with the merged files and not identity theft. Each of the other cases alleged that Equifax reported false information about the plaintiff, and that Equifax failed to delete false information that the plaintiff disputed. See, e.g., *Sloane v. Equifax Info. Servs., LLC*, 510 F.3d 495, 500 (4th Cir. 2007):

> "Equifax violated the FCRA by negligently: (1) failing to follow reasonable procedures designed to assure maximum accuracy on her consumer credit report; (2) failing to conduct a reasonable investigation to determine whether disputed information in her credit report was inaccurate; (3) failing to delete information from the report that it found after reinvestigation to be inaccurate, incomplete, or unverified; and (4) reinserting information into her credit file that it had previously deleted." 510 F.3d at 500.

Similarly, while the false accounts in *Valentine*, *Kirkpatrick* and *Drew* arise out of identity theft, the pleadings reveal that the plaintiffs alleged the same or similar claims as are alleged in this case, i.e., that Equifax reported false information and

failed to delete disputed information. The source of the false information was not the defining fact in each case. See, Ex. A-D.

B. Reprehensibility.

The reprehensibility of a defendant's conduct is one of the factors in determining whether a punitive damage award complies with due process. *BMW of North America, Inc. v. Gore*, 517 US 559, 575, 116 S. Ct. 1589 (1996). Evidence of harm to nonparties is admissible to demonstrate reprehensibility. *Phillip Morris USA v. Williams*, 549 U.S. 346, 127 S. Ct. 1057 (2007). There, the Court noted: "[C]onduct that risks harm to many is likely more reprehensible than conduct that risks harm to only a few. And a jury consequently may take this fact into account in determining reprehensibility." *Id*. at 357.

Similarly, the defendant's pattern of tortious conduct is relevant to this analysis. *TXO Prod. Corp. v. All. Res. Corp.*, 509 U.S. 443, 462, 113 S. Ct. 2711 (1993): "[I]n light of the amount of money potentially at stake, the bad faith of petitioner, *the fact that the scheme employed in this case was part of a larger pattern of fraud, trickery and deceit*, and petitioner's wealth, we are not persuaded that the award was so 'grossly excessive' as to be beyond the power of the State to allow." (Emphasis added).

C. Impeachment or Rebuttal.

Plaintiff anticipates that defendant will offer testimony or other evidence

that its procedures comply with the FCRA, or in the alternative, that its failure to comply with its duties were not negligent or reckless. Numerous juries have concluded otherwise. Thus, the verdicts cited above are relevant as impeachment or rebuttal evidence.

## II. MOTION IN LIMINE NO. 2: MOTION TO EXCLUDE EVIDENCE AND ARGUMENT REGARDING THE GEOGRAPHIC LOCATION OF OPERATORS HANDLING PLAINTIFF'S DISPUTES

Defendant objects to evidence relating to the location of its outsource vendors in India. The evidence is relevant for several reasons. First, plaintiff is entitled to show that Equifax outsourced its duties under the FCRA to overseas vendors to cut costs. Alicia Fluellen, whom Equifax has designated as a trial witness, testified to this fact in her direct testimony in the *Kirkpatrick* trial. Ex. E, Fluellen Tr. Test., p. 17, l. 17, *Kirkpatrick v. Equifax Information Solutions, LLC*, D. Or. Case No. CV 02-1197-MO. Plaintiff is entitled to show that in cutting costs, defendant gave up direct, physical oversight, monitoring and quality assurance.

Second, the jury may wonder why neither plaintiff nor defendant is calling any of the employees of the outsource contractor as witnesses to testify about their actual knowledge of the events in this case. These witnesses are beyond the subpoena power of this Court and cannot be compelled to testify at trial.

Equifax cites *Rangel v. Anderson*, No. 2:15-CV-81, 2016 WL 6595600, at *3 (S.D. Ga. Nov. 7, 2016). In that case, the court found Judge Baker found that

the evidence was relevant. He concluded that the potential prejudice outweighed the probative value. *Id.* However, in its motion Equifax does not explain the prejudice it accuses the jurors of.

Equifax also cites *Dugas v. 3M Co.*, No. 3:14-CV-1096-J-39JBT, 2016 WL 3966142, at *1 (M.D. Fla. June 30, 2016). In that case, the evidence was not excluded, but the parties were simply instructed not to emphasize that the defendant was a foreign corporation. *Id.*

Finally, Equifax cites *Severson v. Chase Manhattan Mortg. Co.*, No. 10-3123-CL, 2011 WL 4443436, at *1 (D. Or. Aug. 26, 2011). In that case, the court granted a motion to strike reference to the origin of calls from the plaintiff's complaint without explanation. *Id.*

## III. MOTION IN LIMINE NO. 3: MOTION TO EXCLUDE EVIDENCE OF EQUIFAX'S NET WORTH, ASSETS, AND FINANCIAL CONDITION

Defendant seeks to exclude evidence of its financial condition during the trial. As courts have done in other cases involving Equifax, plaintiff would agree to withhold offering evidence relating to defendant's financial condition until defendant has had an opportunity to make a motion for directed verdict.

Defendant contends that plaintiff did not obtain evidence of Equifax's net worth in discovery. That is incorrect. First, plaintiff pled in his complaint that "According to Equifax's website, http://investor.equifax.com/ on March 30, 2016, for the twelve months ending in December 31, 2012, Equifax reported operating

revenue of $2,663,600,000 (i.e. more than $2.5 billion)." Complaint, ¶ 15.

Second, financial information for defendant is widely and publicly available. Defendant has explained that its "fair value" can be tracked through the publicly filed documents of its parent corporation, Equifax Inc. See Ex. F, Declaration of Chad Meyer, filed in *Christensen v. Equifax Info. Serv.,* D. Or. Case No. 3:14-cv-0851-AC. Mr. Meyer states: "Equifax [Inc.] is organized and reports its business results in four segments. U.S. Information Solutions (USIS) is the largest segment. USIS consists primarily (but not exclusively) of EIS." (referring to defendant Equifax Information Services, LLC) Meyer Decl. ¶ 5. Mr. Meyer goes on to explain "I am not aware of any Equifax or EIS documents that reflect the value or 'net worth' of EIS. We do, however, track and measure operating revenue for USIS. The operating revenue for USIS is reported annually in Equifax Inc.'s 10-K filings with the Securities Exchange Commission." Meyer Decl. ¶ 9-10.

The most recent 10-K Annual Report for Equifax Inc. is linked to from the website, and can be found at <https://otp.tools.investis.com/clients/us/equifax/SEC/sec- show.aspx?Type=html&FilingId=11875154&CIK=0000033185 &Index=10000>. That filing shows that the operating revenue for USIS was $537 million in 2016, $491.2 million in 2015, $421 million in 2014. Defendant subsequently confirmed that these publicly available documents are evidence of its net worth:

"To the extent Plaintiff seeks documents showing Equifax's operating revenue, those documents are publicly available to Plaintiff. Equifax Information Services LLC is a wholly-owned subsidiary of Equifax Inc., which is a publicly traded company, and Equifax Information Services LLC's operating revenue is set forth in Equifax Inc.'s 2014 10-K filed with the Securities & Exchange Commission, listed as the operating revenue of U.S. Information Solutions." Ex. G (Equifax Information Services LLC's Supplemental Response to Plaintiff's Request for Production in *Christensen*).

Furthermore, the parties' counsel have routinely agreed to a stipulation as to the defendant's net worth. See, Ex. H, Declaration of Lewis P. Perling in *Christensen*:

"Equifax offered, without waiving its objection to stipulate that its operating revenue is set forth in the Equifax Inc. 2014 10-K filed with the Securities & Exchange Commission. In particular, Equifax informed Plaintiff that the operating revenue listed for U.S. Information Solutions in the 2014 annual report filed by Equifax's parent company, Equifax Inc., with the U.S. Securities & Exchange Commission, is reflective of Equifax's operating revenue.

Mr. Baxter initially stated that he was 'open to' the suggested compromise, especially since he agreed to a similar stipulation in another case . . ." Ex. H at ¶ 6-7.

The other case which Mr. Perling references is presumably *Miller*, in which defendant's counsel stated on the record: "Ladies and gentlemen, for purposes of this trial, the plaintiff and Equifax Information Services, LLC, which we've referred to as Equifax to you, have stipulated that the operating revenue of Equifax is 916,800,000, which is an approximation of net worth." Ex. I (*Miller* Tr. p. 592). The parties' counsel made a similar stipulation in the *Kirkpatrick* case. Ex. J

(*Kirkpatrick* Tr. Vol. 4, p. 3). See also, Ex. L, *Williams v. Equifax*, Orange Co. Cir. Ct. (Fla.) Case No. 48-2003-CA-9035-0 (stipulating to reading of Equifax Inc. annual reports as proxy for EIS's net worth).

Defendant's financial condition is relevant to the jury's determination of any punitive damages award. A defendant's net worth and financial condition are relevant and admissible to establish the appropriate amount of punitive damages. *City of Newport v. Facts Concerts. Inc.*, 453 U.S. 247, 270, 101 S. Ct. 2748 (1981) (noting that "evidence of a tortfeasor's wealth is traditionally admissible as a measure of the amount of punitive damages that should be awarded."); *United States v. Big D Enterprises, Inc.*, 184 F.3d 924, 932 (8th Cir. 1999) (under federal law, evidence of defendant's financial worth traditionally admissible for purpose of evaluating amount of punitive damages).

## IV. MOTION IN LIMINE NO. 4: MOTION TO EXCLUDE EVIDENCE OF EXPERIAN AND TRANS UNION'S POLICIES AND PROCEDURES

Plaintiff does not intend to offer evidence of Experian or Trans Union's policies and procedures. However, defendant's motion goes further that the title of the motion suggests. Defendant also seeks to preclude evidence that Experian and Trans Union did not report false information in his credit reports. Def. Br., at 12.

Plaintiff has the burden to prove that Equifax's failure to comply with the FCRA was a "substantial factor" in causing his damages. *Philbin v. Trans Union Corp.,* 101 F.3d 957, 968 (3d Cir. 1996); *Khoury v. Ford Motor Credit Co.*, LLC,

No. 13–11149, 2013 WL 6631471, at *6 (E.D.Mich. Dec. 17, 2013). Plaintiff is entitled to testify that his damages were caused by Equifax, and not by Experian and Trans Union.

Moreover, plaintiff anticipates that defendant will argue that its procedures "assure the maximum possible accuracy" of plaintiff's credit reports, as required by Section 1681e(b). Evidence that Experian and Trans Union did not report false accounts and information belonging to Mary Anderson is admissible to rebut that assertion.

## V. MOTION IN LIMINE NO. 5: MOTION TO EXCLUDE MEDICAL OPINIONS

Defendant does not seek to exclude medical opinions, but rather seeks to exclude plaintiff's observations of his own physical reactions to defendant's conduct. Courts have routinely permitted plaintiffs to testify as to their own physical symptoms in support of their noneconomic damages claims.

In *Smith v. E-Backgroundchecks.com, Inc*., 81 F. Supp. 3d 1342, 1366 (N.D. Ga. 2015), the court held: "In particular, plaintiff alleges that BGC's actions in providing an inaccurate report to Dart caused him to suffer from emotional distress severe enough to result in physical symptoms, including loss of sleep, weight loss, and anxiety." Accord, *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 242 (4th Cir.2009) (plaintiff "presented evidence that her mental distress manifested itself as headaches, sleeplessness, skin acne, upset stomach, and hair loss");

Llewellyn v. Allstate Home Loans, Inc., 711 F.3d 1173, 1182 (10th Cir. 2013) (Plaintiff "described, in great detail, the stress, anxiety, and physical symptoms he experienced . . ."); *Millstone v. O'Hanlon Reports, Inc.*, 528 F.2d 829, 831, 834 (8th Cir.1976) (Plaintiff testified to his "loss of sleep, nervousness, frustration and mental anguish").

The cases cited by defendant turn on medical diagnoses, which require expert medical testimony to establish causation. For example, *Wingster v. Head*, 318 Fed.Appx. 809, 815 (11th Cir. 2009) held that the plaintiff need expert medical testimony to prove causation of a brain aneurysm.

*Abbott v. Elwood Staffing Servs., Inc.*, No. 12 C 2244, 2014 WL 3809808, at *8 (N.D. Ala. July 31, 2014) dealt with medical between the plaintiff spotting as a result of installing heavy doors.

The witness in *Franklin v. Shelton*, 250 F.2d 92, 97 (10th Cir. 1958) testified that her son had suffered two broken ribs and a punctured lung. The court found that it was harmless error. *Id.*

Finally, in *Payne v. May*, No. CIV.A. 4:06-CV-254-H, 2009 WL 6365402, at *1 (N.D. Ga. Mar. 13, 2009), while the court held that the expert witness was excluded, the court nevertheless explicitly allowed lay witnesses to testify, holding "any witness who testifies regarding Mr. Payne's alleged oversedation may only relate his or her own observations. *Id.*

Plaintiff has found no cases holding that a witness is not permitted to testify as to their own observations of headaches, lost sleep, lost appetite and upset stomach.

## VI. MOTION IN LIMINE NO. 6: MOTION TO EXCLUDE REFERENCE TO DATA BREACH

Defendant's motion misstates plaintiff's claims for relief, and the remedy defendant seeks ignores the likelihood that some (or all) of the jurors will be aware of the data breach as a result of news coverage.

A. <u>Plaintiff Alleges a Breach of his Privacy under Section 1681b.</u>

Plaintiff has alleged that Equifax provided his credit report to Mary Anderson's creditors without his authorization in violation of 15 U.S.C. § 1681b, and he specifically cites the invasion of his privacy as part of his damages. Plaintiff does not intend to offer evidence that the data breach was related to Equifax's violation of Section 1681b. However, plaintiff is entitled to offer evidence that Equifax's procedures are inadequate to protect plaintiff's privacy and the security of his personal identifying information.

B. <u>Ignoring the Data Breach is not Realistic.</u>

Media reports indicate that the number of affected consumers in the United states is approximately 145 million. The Atlanta Journal-Constitution has reported

that some 5 million Georgians may have been affected.[1] While plaintiff does not intend to offer evidence of the breach in his case in chief, it is unrealistic to believe that members of the jury will be unaware of the breach. Indeed, as part of *voir dire*, many prospective jurors may self-identify as victims of the breach, or having accessed Equifax's website to determine if they are victims of the breach.

A number of prospective jurors may be plaintiffs or putative class members in one of the numerous cases that have been filed since the breach was disclosed to the public. In fact, defendant's counsel may be representing Equifax's and its parent corporation against prospective jurors in pending litigation regarding the breach.

## VII. MOTION IN LIMINE NO. 7: MOTION TO EXCLUDE EVENTS OUTSIDE OF THE APPLICABLE STATUTE OF LIMITATIONS

Defendant seeks to exclude testimony regarding its activity predating the filing of the complaint by two years. First, defendant cites the wrong statute of limitations. Section 1681p provides that a civil action "may be brought ... not later than the earlier of (1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or (2) 5 years after the date on which the violation that is the basis for such liability occurs." Thus, even under Equifax's framing, conduct from 2011 would be admissible.

---

[1] Avail. at <http://www.myajc.com/news/state--regional-govt--politics/million-georgians-may-have-had-data-impacted-equifax-breach/>.

More importantly, however, courts have routinely held that the parties' earlier interactions are relevant to establish notice to the defendant or the defendant's mental state. In *Bryant v. TRW, Inc.,* 487 F. Supp. 1234, 1236 (E.D. Mich. 1980), *aff'd*, 689 F.2d 72 (6th Cir. 1982), the district court considered exactly this situation:

> In declining to exclude evidence of acts or occurrences more than two years old, the Court held that such acts or occurrences could be relevant to a determination of whether defendant either negligently or willfully failed to follow reasonable procedures to assure maximum possible accuracy of information. The procedures used by the defendant may or may not involve a method of operation which extends over a period of time. Plaintiff was required to introduce evidence relating to the way defendant operated before he could introduce evidence regarding acts or occurrences as to himself. At trial the Court allowed evidence relating to the history of plaintiff's relationships with defendant going as far back as 1971, but carefully instructed the jury that plaintiff's claims must be judged on the 1976 reports.

*Accord*, *Lazar v. Trans Union LLC*, 195 F.R.D. 665, 671 (C.D. Cal. 2000); *Byrd v. Trans Union LLC*, No. C/A 3:09-609-JFA, 2010 WL 2555119, at *1 (D.S.C. June 18, 2010).

Additionally, defendant will likely offer evidence of events that took place long ago, when it explains why Mr. Ma's credit file was merged with Ms. Anderson's.

Finally, plaintiff anticipates that defendant may argue that this is a "one dispute" case, which would leave the jury with the false impression that plaintiff was aware of false credit reports but took no action to seek self-help until recently.

## VIII. MOTION IN LIMINE NO. 8: MOTION TO EXCLUDE EVENTS THAT OCCURRED AFTER PLAINTIFF FILED THIS LAWSUIT

Plaintiff alleges that defendant failed to comply with Section 1681e(b) by reporting false accounts and information, which Equifax has continued to do long after plaintiff filed the lawsuit. Complaint, ¶ 29. Plaintiff also alleges defendant has failed to permanently block the reinsertion of previously deleted information as required by Section 1681i. Complaint, ¶ 28. He further alleges that defendant has caused him damages in the form of "harm to credit reputation; unfavorable credit terms; reduction in credit score; emotional distress and mental anguish; out-of-pocket expenses; and time." Complaint ¶ 37. Plaintiff has continued to suffer these damages as defendant refuses to permanently correct his credit report.

Additionally, evidence that Equifax is still reporting false accounts and information months after plaintiff filed this lawsuit is relevant to show that defendant's procedures do not assure maximum possible accuracy of the information contained in plaintiff's credit file and consumer reports.

Finally, plaintiff anticipates that defendant will testify that the earlier failure to delete false accounts was the result of human error – an effort to blame one of the outsource contractors. Plaintiff should be permitted to rebut this inference.

16

## IX. MOTION IN LIMINE NO. 9: MOTION TO EXCLUDE EVIDENCE OR REFERENCE TO PLAINTIFF'S CREDIT SCORE

Defendant contends that "Plaintiff does not allege that his credit score was ever at issue or that an inaccurate Equifax credit score was the cause of any damage." Def's Br., at 19. That is incorrect. Plaintiff alleges that defendant has caused him damages in the form of "harm to credit reputation; unfavorable credit terms; reduction in credit score; emotional distress and mental anguish; out-of-pocket expenses; and time." Complaint ¶ 37. Plaintiff has produced documents that specifically show that his Equifax credit score is substantially lower than his Experian and Trans Union credit scores. Ex. K (State Bank & Trust Credit Report – Trans Union: 769, Equifax 652, Experian 783).

## X. MOTION IN LIMINE NO. 10: MOTION TO EXCLUDE WITNESSES NOT PROPERLY IDENTIFIED IN DISCOVERY

A. Equidata/Susan Moran. Susan Moran is the general manager of accounts receivable management services for Equidata (a company unrelated to defendant). Ms. Moran responded to a third party subpoena issued by plaintiff in this case. Plaintiff produced those records, including Ms. Moran's name and contact information to defendant on August 10, 2017.

B. Navy Federal Credit Union. Plaintiff no longer intends to call a witness from behalf of Navy Federal Credit Union, and accordingly, defendant's motion is moot in this regard.

## XI. MOTION IN LIMINE NO. 11: MOTION TO EXCLUDE SPECIFIC DOCUMENTS BASED ON HEARSAY RULE AND OTHER GROUNDS

Ex. 7. P000179-000215 – 12/4/15 email. Withdrawn.

Ex. 9. P00217 – 12/14/15 Avantus Letter. Plaintiff's Exhibit 9 should be attached to the next page in series, P00218. The combined document is a form provided by Avantus to Mr. Ma. The handwritten portions of P00217 along with the attached P00218 reflect documents sent by Mr. Ma back to Avantus. These documents are not hearsay because they are not offered to prove the truth of the matter asserted, but rather to show plaintiff's efforts to qualify for credit. See FRE 801(c)(2).

Ex. 10. P000281 – 000219 – 12/18/15 Email. Withdrawn.

Ex. 13. P000231 – 000233 – 12/21/15 Email. Withdrawn.

Ex. 18. P002041 – 002109 – 12/7/15 Email. Withdrawn.

Ex. 19. P002311 – 002315 – Ryland Homes Documents – Withdrawn.

Ex. 25. EQUIDATA000001-000004 – Equidata Docs. Plaintiff produced those records to defendant via electronic mail on August 10, 2017. Plaintiff has listed Equidata and Susan Moran as witnesses for the purpose of authentication as business records.

DATED this 26th day of October, 2017.

Respectfully submitted,

s/ Justin M. Baxter

_____
Justin M. Baxter, *admitted pro hac vice*
Baxter & Baxter, LLP
8835 SW Canyon Lane, Suite 130
Portland, OR 97225
Telephone: (503) 297-9031
Email: justin@baxterlaw.com

Shimshon Wexler, GA Bar No. 436163
315 W Ponce de Leon Ave Suite 250
Decatur, GA 30030
Telephone: (212) 760-2400
Facsimile: (917) 512-6132
Email: swexleresq@gmail.com

## **CERTIFICATE OF COMPLIANCE**

The undersigned certifies that 14 point New Times Roman was used for this

pleading and that it has been formatted in compliance with Local Rule 5.4.

DATED this 26th day of October, 2017.

/s/ *Justin M. Baxter*
Justin M. Baxter

## **CERTIFICATE OF SERVICE**

I hereby certify that I served the foregoing via the Court's electronic filing system, to the following persons and on the date set forth below:

Lewis P. Perling
Ted E. Roethke
Phyllis B. Sumner
Kendall W. Carter
Meryl W. Roper
KING & SPALDING, LLP
1180 Peachtree Street N.E.
Atlanta, Georgia 30309-3521

*Attorneys for Equifax Information Services LLC*

DATED this 26th day of October, 2017.

s/ Justin M. Baxter

_____
Justin M. Baxter, *admitted pro hac vice*
Baxter & Baxter, LLP
8835 SW Canyon Lane, Suite 130
Portland, OR 97225
Telephone: (503) 297-9031
Email: justin@baxterlaw.com

Shimshon Wexler, GA Bar No. 436163
315 W Ponce de Leon Ave Suite 250
Decatur, GA 30030
Telephone: (212) 760-2400
Facsimile: (917) 512-6132
Email: swexleresq@gmail.com