IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| FOLEY MA, <br><br> Plaintiff, <br><br> v. <br><br> EQUIFAX INFORMATION SERVICES, LLC, <br><br> Defendant. | CIVIL ACTION NO.<br>1:16-CV-1055-LMM |

## ORDER

This case comes before the Court on Defendant's Motion to Exclude or Limit Testimony of Plaintiff's Expert, Evan Hendricks [41]. After due consideration, the Court enters the following Order:

**I.   BACKGROUND**

This case arises from an alleged mix-up of consumer credit files, sale of inaccurate information to creditors, and a failure to fix the problem. Dkt. No. [1]. Plaintiff alleges these problems occurred when another person's credit information became incorrectly attached to his and that Defendant failed to fix the error when it was brought to its attention. Id.

Plaintiff alleges that Defendant violated the Fair Credit Reporting Act ("FCRA") by not conducting a reasonable reinvestigation when Plaintiff disputed

the completeness or accuracy of his credit report, and not following reasonable procedures to assure maximum possible accuracy when issuing a credit report. Plaintiff also alleges that Defendant has suffered from mix ups in the past and therefore knows about the potential for mix ups, but chooses to ignore the risk.

Plaintiff has disclosed Evan Hendricks as an expert in support of his claims. Plaintiff notes that Mr. Hendricks has (1) closely studied the credit reporting industry for more than 35 years; (2) published a newsletter and written a book on the credit reporting industry; (3) testified as an expert in several FCRA trials; (4) testified several times before Congress on FCRA issues; and (5) had access via discovery to many of Defendant's documents that are not generally publically available. Defendant contends that Mr. Hendricks's testimony must be excluded by the Court under Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 592 (1993), and Federal Rule of Evidence 702.

## II.   LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony. This rule provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and

> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702.

The United States Supreme Court explained the basis for this rule in Daubert, 509 U.S. at 592. "Unlike an ordinary witness, *see* Rule 701, an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." Id. But a jury may have difficulty evaluating an expert's opinion. See id. Accordingly, trial courts must act as gatekeepers to ensure that an expert witness's testimony is not only relevant, but reliable. Id. "The proponent of the testimony does not have the burden of proving that it is scientifically correct, but that by a preponderance of the evidence it is reliable." Allison v. McGhan Med. Corp., 184 F.3d 1300, 1312 (11th Cir. 1999) (citing In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 744 (3rd Cir. 1994)). Thus, the inquiry into reliability must focus on "principles and methodology" and not the expert witness's conclusions. Daubert, 509 U.S. at 595.

Under Rule 702, the trial court must consider whether the expert witness is qualified, whether the testimony is reliable, and whether the testimony is helpful to the trier of fact. More specifically, "[t]rial courts must consider whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

3

U.S. v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (citing City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 562 (11th Cir. 1998)).

The proponents of expert testimony bear the burden to show that their expert is qualified to testify competently regarding the matters the expert intends to address, the methodology by which the expert reached his or her conclusions is sufficiently reliable, and the testimony assists the trier of fact. Frazier, 387 F.3d at 1260 (quoting McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1257 (11th Cir. 2002)); Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty., Fla., 402 F.3d 1092, 1113-14 (11th Cir. 2005) (explaining that it is the proponent's burden to lay the foundation for admission of expert testimony).

However, "[a] district court's gatekeeper role under Daubert 'is not intended to supplant the adversary system or the role of the jury.'" Maiz v. Virani, 253 F.3d 641, 665 (11th Cir. 2001) (quoting Allison, 184 F.3d at 1311); accord Daubert, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."); Adams v. Lab. Corp. of Am., 760 F.3d 1322, 1334 (11th Cir. 2014) (holding that a risk of bias in an expert witness's testimony "goes to the weight of her testimony, not its admissibility"). Rather, the objective of Daubert's gatekeeping requirement "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho

Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152 (1999); accord Frazier, 387 F.3d at 1260. The district court has "substantial discretion in deciding how to test an expert's reliability and whether the expert's relevant testimony is reliable." United States v. Majors, 196 F.3d 1206, 1215 (11th Cir. 1999).

The Eleventh Circuit has cautioned that "[m]any factors will bear on the inquiry, and [there is no] definitive checklist or test." Maiz, 253 F.3d at 665 (quoting Daubert, 509 U.S. at 593). While Daubert and its progeny provide flexible guidelines for the admissibility of evidence under Rule 702, "expert testimony that does not meet all or most of the Daubert factors may sometimes be admissible" based on the particular circumstances of a specific case. United States v. Brown, 415 F.3d 1257, 1266-68 (11th Cir. 2005); see also United States v. Scott, 403 F. App'x 392, 397 (11th Cir. 2010) (finding that the Daubert factors are only general guidelines and the trial judge has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"); Quiet Tech. D C-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1341 (11th Cir. 2003) (finding that the court should consider the Daubert factors "to the extent possible" but that "these factors do not exhaust the universe of considerations that may bear on the reliability of a given expert opinion, and a federal court should consider any additional factors that may advance its Rule 702 analysis").

Daubert sets out a list of "general observations" for determining whether expert testimony is sufficiently reliable to be admitted under Rule 702 including:

(1) whether the theory in question can be and has been empirically tested; (2) whether the theory in question has been subjected to peer review and publication; (3) the theory's known or potential error rate and whether that rate is acceptable; and (4) whether the theory is generally accepted in the scientific community. 509 U.S. 579, 593-594.

The advisory committee notes for Rule 702 have collected additional factors that courts consider in assessing the reliability of expert testimony:

> (1) Whether experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying.
>
> (2) Whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion.
>
> (3) Whether the expert has adequately accounted for obvious alternative explanations.
>
> (4) Whether the expert is being as careful as he would be in his regular professional work outside his paid litigation consulting.
>
> (5) Whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give.

FED. R. EVID. 702 advisory committee's note to 2000 amendments (internal quotation marks and citations omitted).

### III. DISCUSSION

Defendant contends that Plaintiff's expert witness Evan Hendricks must be excluded under Daubert and Rule 702 because (1) he is not qualified; (2) his methods are not reliable; and (3) his testimony will not assist the trier of fact. In the alternative, Defendant asks that certain aspects of Mr. Hendricks's testimony

be excluded on relevancy and prejudice grounds. The Court will address each of Defendant's objections separately.

### a. Qualifications

Defendant argues that Mr. Hendricks is not "qualified as an expert by knowledge, skill, experience, training, or education." FED. R. EVID. 702. In particular, Defendant argues that Mr. Hendricks is not qualified to testify regarding (1) Defendant's procedures; and (2) Plaintiff's damages.

#### 1. *Defendant's Procedures*

Defendant argues that Mr. Hendricks is not qualified to testify about Defendant's procedures because Mr. Hendricks (1) does not have any education or training related to the operation of a consumer reporting agency; (2) has never been employed by any consumer reporting agency; (3) has never tested any of his theories or subjected them to peer review; (4) does not have the skill to test a computer program designed to match computer consumer credit information; and (5) has never developed policies or procedures for maintaining consumer reporting accuracy. Defendant also contends that the mere fact that Mr. Hendricks has previously testified on FCRA matters is not relevant to whether he is qualified in a given case.

However, the Court finds that Mr. Hendricks is qualified to testify regarding Defendant's procedures. He has written books and provided testimony before Congress and other governmental agencies relating to credit reporting agency practices. He has also provided expert testimony against Defendant on

several occasions in which he was given access to Defendant's internal procedures and practices. Mr. Hendricks has a wealth of experience regarding credit reporting agency practices, and an expert may be qualified on the basis of experience. FED. R. EVID. 702 advisory committee's note to 2000 amendments.

Defendant's objections go more towards the weight of Mr. Hendricks's testimony than to its admissibility. And "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596. Accordingly, the Court finds that Mr. Hendricks is qualified to discuss Defendant's procedures. The Court will defer to trial whether there is another evidentiary basis for excluding specific opinions.

### 2. Plaintiff's Damages

Defendant also argues that Mr. Hendricks is not qualified to testify on Plaintiff's damages, as Mr. Hendricks has no training or experience relevant to assessing damages. In addition, Defendant contends that the jury could determine for themselves certain aspects of Mr. Hendricks's testimony, such as that a loss of time and energy caused by inaccurate credit reports could contribute to emotional distress. In contrast, Plaintiff argues that because the type of harm suffered by Plaintiff is consistent with harm suffered by consumers in Plaintiff's situation, Mr. Hendricks is qualified to discuss Plaintiff's damages.

The Court finds that Plaintiff is qualified to talk about damages typically suffered by victims of credit reporting inaccuracies. His knowledge and

experience may help the jury contextualize and make sense of complicated information.

The Court is aware, however, that testimony of this nature may stray into speculation or may be inadmissible for other reasons. Such evidentiary objections can be handled at trial. Accordingly, at this stage in the litigation process, the Court finds that Mr. Hendricks is qualified to provide testimony about damages.

### b. Reliability

Defendant contends that Mr. Hendricks's opinions are not reliable because Mr. Hendricks has not shown that his opinions are "properly grounded, well reasoned, and not speculative." FED. R. EVID. 702 advisory committee's note to 2000 amendments. Defendant further contends that Mr. Hendricks has made no attempt to explain his methods or the basis for his assertions, nor is there evidence that his methods satisfy the Daubert factors in that they have been tested, subjected to peer review, have a known error rate, or have been generally accepted.

However, in non-scientific cases such as this one, "the relevant reliability concerns may focus on an expert's personal knowledge or experience." Kumho, 526 U.S. at 150. In addition, "expert testimony that does not meet all or most of the Daubert factors may sometimes be admissible" based on the particular circumstances of a specific case. Brown, 415 F.3d at 1266-68. As discussed above, Mr. Hendricks has accumulated a wealth of personal knowledge and experience in consumer credit reporting agency practices. Therefore, the Court finds that Mr.

Hendricks's methods are sufficiently reliable, and that Defendant's objections go more towards the weight of Mr. Hendricks's testimony than to its admissibility.

### c. Assisting the Trier of Fact

Defendant argues that Mr. Hendricks's testimony will not assist the trier of fact because Mr. Hendricks's (1) opinions do not require specialized knowledge; (2) opinions include speculation regarding Defendant's state of mind; (3) factual testimony will not assist the jury; and (4) legal opinions are improper.

However, understanding the inner workings of the credit reporting industry may require some specialized knowledge. And Mr. Hendricks's unique and specialized knowledge regarding credit reporting agency practices may help the jury contextualize and make sense of complicated information.

Defendant also argues that Mr. Hendricks should not be allowed to testify as to Defendant's state of mind and what Defendant "knew." As a general matter, the Court agrees. But certain aspects of Mr. Hendricks's testimony in this area may be allowed. For example, although Mr. Hendricks may not know Defendant's subjective intent, he may be able to testify as to what information would mean to a reasonable credit reporting agency in a more objective sense. Because Mr. Hendricks is qualified to provide this more objective testimony, the Court will not exclude the entirety of his testimony on this issue.

As to improper legal opinions, Defendant is correct that, as a general principle, "testifying experts may not offer legal conclusions." Cook, 402 F.3d at 1112 n.8. Based on this general principle, all witnesses "are prohibited from

testifying as to questions of law regarding the interpretation of a statute, the meaning of terms in a statute, or the legality of conduct." Dahlgren v. Muldrow, 2008 WL 186641, at *5 (N.D. Fla. Jan. 18, 2008). Instead, "[t]he determination of which law applies and what the law means is for the Court to decide." Id.

However, "[a]n expert does not invade the court's authority by discoursing broadly over the entire range of the applicable law where the opinion is focused on a specific question of fact." Camacho v. Nationwide Mut. Ins. Co., 13 F. Supp. 3d 1343, 1366 (N.D. Ga. 2014). Here, Mr. Hendricks seeks to testify that Defendant did not have adequate procedures to ensure accuracy, and that Defendant was reckless in not taking steps to prevent mixing after Plaintiff gave notice of inaccuracies. Such testimony seeks to resolve a factual dispute, but does not go so far as to say that Defendant violated the FCRA. Therefore, Mr. Hendricks's opinions are permissible.

And if in fact Mr. Hendricks attempts to provide testimony at trial that improperly goes to Defendant's state of mind or impermissibly interprets or applies the FCRA, such evidence can be excluded pursuant to proper evidentiary objections. Accordingly, at this stage in the litigation process, the Court will not prohibit Mr. Hendricks from providing testimony that discusses Defendant's objective state of mind or the FCRA.

### d. Prior Cases and Consent Decrees

Defendant contends that even if the Court allows Mr. Hendricks to testify as an expert, it should limit the following aspects of his testimony: (1) verdicts against Defendant in other FCRA cases; (2) twenty-year old consent decrees between Defendant and regulatory agencies; and (3) other unrelated administrative actions. Defendant argues that the proposed testimony is not relevant and any probative value is outweighed by its potential to prejudice the jury.

The parties disagree on the relevancy of prior cases, including whether some of the prior cases in Mr. Hendricks's testimony actually involved mixed files, which is the issue in this case. The parties also disagree on the relevancy of consent decrees. Because there is a factual dispute over the relevancy of the evidence, a ruling on this issue is deferred until the record is more fully developed at trial. See Am. K-9 Detection Servs., Inc. v. Rutherford Int'l, Inc., 2016 WL 7183365, at *3 (M.D. Fla. May 16, 2016) ("Unless evidence [is clearly inadmissible on all potential grounds] . . . evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context."); Bowden ex rel. Bowden v. Wal-Mart Stores, Inc., 2001 WL 617521, at *1 (M.D. Ala. Feb. 20, 2001) (citing Sperberg v. Goodyear Tire & Rubber Co., 519 F.2d 708, 712 (6th Cir. 1975)) ("It is the better practice to wait until trial to rule on objections when admissibility substantially depends upon what facts may be developed there.").

Therefore, the Court will neither prevent Mr. Hicks from testifying as an expert, nor limit his testimony at this stage in the litigation. Accordingly, Defendant's Motion to Exclude is **DENIED**.

### IV.   CONCLUSION

In accordance with the foregoing, the Court **DENIES** Defendant's Motion to Exclude [41]. Plaintiff has met his burden under Daubert. The Court finds that these matters are more properly handled with cross examination and evidentiary objections at trial.

**IT IS SO ORDERED** this 13th day of December, 2017

_____
**Leigh Martin May**
**United States District Judge**